[Louisville & Nashville Railroad Co. v. Orr.]

# Louisville & Nashville Railroad Co. v. Orr.

## *Action for Damages against Employer, by Administrator of Deceased Employee.*

1. *Measure of damages.*—Under the statute which gives an action against the employer for personal injuries caused by negligence, which resulted in the death of an employee (Code, § 2591), the measure of damages is limited to the pecuniary injury sustained by the persons to whose benefit the recovery enures; exemplary or vindictive damages can not be recovered, nor can anything be allowed on account of the pain and suffering of the deceased, the grief and distress of his family, or the loss of his society.

2. *Same; evidence.*—That the jury may have data from which to estimate the pecuniary compensation proper to be allowed, evidence should be admitted as to the age of the deceased, probable duration of life, habits of industry, business, earnings, health, skill, reasonable expectations, and possibly other facts; but, when the evidence only shows his age and the fact of the killing, a verdict for more than nominal damages would be purely conjectural.

3. *Railroad rules as evidence.*—A railroad company has the right to adopt reasonable rules and regulations for the government of its employees, and for its own protection; but it can not stipulate for immunity from liability for its own wrongful negligence, nor require an employe to assume the risks which by statute are devolved on itself.

4. *Contributory negligence in dangerous service.*—A brakeman on a railroad, who, in discharge of his duties, knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, is guilty of contributory negligence; and though he assumes the ordinary and known risks incident to his duties, he is not excusable for encountering a known danger so obvious and imminent that a man of reasonable prudence would not attempt it.

5. *Injuries from defective materials and appliances.*—It is the duty of a railroad company to furnish and maintain suitable materials and appliances for use in its business, and a person in its employment may act on the presumption that this duty has been performed; unless he knows to the contrary, or, being charged with the duty of examining and ascertaining their safety and suitableness, he has neglected to do so.

6. *Argument of counsel to jury.*—The former decisions of this court have " defined and declared the boundary of legitimate argument to the jury, with as much precision and clearness as the nature of the question will admit of. When counsel trespass on the domain of unproven facts, the presiding judge should promptly set aside any verdict the jury may render, unless clearly convinced that the verdict is right, and that it would have been the same in the absence of such unauthorized argument."

APPEAL from the City Court of Decatur.

Tried before the Hon. WM. H. SIMPSON.

This action was brought by Horace Orr, as administrator of the estate of Henry Griffin, deceased, to recover damages for

VOL. 91.

[Louisville & Nashville Railroad Co. v. Orr.]

the wrongful and negligent acts of defendant and its servants, which, as alleged, caused the death of said Griffin while in the defendant's service as a brakeman. The injury occurred on the 4th May, 1887, and the action was commenced on the 24th May. The evidence showed that, at the time of the accident, a train of freight cars, under the superintendence of one Price as conductor, had stopped at Holmes' Gap to take on several cars which were standing on a spur-track; that the conductor told one Sullivan, a brakeman, to take the engine and bring out the cars, and told Griffin to go with him; that they acted in obedience to these orders, and coupled the engine on to the four cars, two of which were empty, and the others loaded with rock; that these cars, called gondolas, had sides about three feet high, and gates at each end, or "drop-doors," about the same height; that these gates opened inward, and were generally left down when the car was not loaded, but, when standing, were kept up by the coal or rock in the car, and were fastened by a hook and staple on the outside; that after the cars had been coupled to the engine, and the train had started to move, Griffin went back to the rear cars, stepped on the rock which was two feet or more from the gate, sprang to the top of the gate, and attempted to jump or spring to the top of the gate in the next car, but the gate, not being fastened, flew backward, and precipitated him between the cars. The accident was witnessed by Sullivan, the brakeman, Wright, the engineer, Gravitt, who had just been filling the cars with rock, and one Stinson, who had charge of an engine in the stone quarry; and all of them were examined as witnesses on the trial. Stinson said that the conductor was present at the time, but the others said that he was unloading cars on the main track, nearly a half-mile distant.

The complaint alleged, in different counts, (1) that the accident was caused by defects in the fastenings of the car; (2) by the negligence of the conductor in not seeing that the door of the car was in good condition, and properly fastened; (3) by the negligence of some other person who was charged with that duty. The principal defense was contributory negligence. Sullivan testified: "Griffin knew that it was his duty to stay on the first car, next to the engine. . . I don't know what he was coming towards the rear car for. There was no necessity for him to come, and the cars were in motion." Wright, the engineer, testified: "There never have been any rules about the gates. When the cars were unloaded, it was no one's duty to see that the gates were fastened. I gave Griffin [orders?] to go from car to car. I ordered him to go over and help Sullivan to get out the cars on the side-track, and this

was the only order I gave." He further testified, also :
"There was no necessity for him to leave the first car, and I
was backing out when he was killed." Sullivan testified, also :
"The conductor never gave orders about the gates. I never
knew the conductor to see that the gates were fastened, unless
the car would break down. If a brakeman saw it, it was his
duty to fix it." Gravitt testified, that he examined the car
immediately after the accident; that the hook on one side of
the door "had been broken some time, and the other hook
was bent so that it could not be fastened." It was proved, also,
that the deceased was a negro, about thirty-five years old,.
and had been in the defendant's employment as brakeman for
six or seven months, having previously worked on other roads
in the same capacity.

As bearing on the questions of negligence involved in the case,.
the plaintiff offered in evidence, from the printed rules and
regulations of the defendant corporation, the following rules,.
which the court admitted, against the objection and exception
of the defendant : (*No. 133.*). "The general direction and
government of a train, from the time of receiving its passen-
gers or freight, until it arrives at its destination, is vested in
the conductor. He is held responsible for its safe and proper
conduct, and all men employed on the train are required
to yield obedience to his proper orders." (*No. 149.*)
"Freight conductors are required to do their work thoroughly
at stations, bearing in mind that trains are run to do the busi-
ness of the road, and not merely to make time over it. Trains,
however, are expected to run with regularity, and as nearly
on time as the prompt performance of the rules will permit."
(*No. 150.*) "The proper place for a freight conductor, while
his train is in motion, is on the deck of his caboose; if it has
one ; and if the caboose should not be provided with a deck,.
he will then maintain such other position, either on the top or
inside, as will give him a full view of his train, and enable him
to see that his brakemen properly perform their duties, and
that his flag-man goes out promptly when necessary to flag."
This rule contained other instructions to conductors, as to allow-
ing brakemen to exchange, to ride in the caboose in inclement
weather, etc., but these are immaterial. "In allowing this rule
to go to the jury," the bill of exceptions states, "the court
instructed them that it did not require conductors to follow
the engine into sidings, or spur-tracks, for the purpose of bring-
ing cars out on the main track." (*No. 155.*) "They must,
not take cars which, in their judgment, are loaded improperly,.
or too heavily, or which are not in a condition to run
safely." (*No. 309.*) "They [car-inspectors] must inspect

[Louisville & Nashville Railroad Co. v. Orr.]

all cars passing their stations, and make such repairs as are necessary, giving special attention to cars running on passenger trains."

The defendant offered in evidence rules Nos. 130 and 147, respectively, and excepted to their exclusion on objection by plaintiff. These rules were: (*No. 130.*) "All persons entering or remaining in the service of this company, are warned that, in accepting or retaining employment, they must assure the ordinary risks attending it. Each employè is expected, requested and required to look after and be responsible for his own safety, as well as to exercise the utmost caution to avoid injury to his fellows, especially in the switching of cars, and in all movements of trains. Stepping upon the front of approaching engines, jumping on or off trains or engines moving at a high rate of speed, getting between cars while in motion to uncouple thèm, and all simular imprudences, are dangerous, and in violation of duty. Employès of every grade are warned to see for themselves, before using them, that the machinery or tools which they are expected to use are in proper condition for the service required; and if not, to put them in the proper condition, or see that they are so put, before using them. The company does not wish or expect its employès to incur any risks whatever, from which, by exercise of their own judgment, and by personal care, they can protect themselves, but requires them to take time, in all cases, to do their duty in safety, whether they may be at the time acting under orders of their superiors or otherwise."
(*No. 147.*) "Brakemen on freight trains, before leaving a terminal station, must examine all brakes on their trains, and, if any should be found in bad order, report the fact to their conductors."

The defendant excepted to several portions of the general charge given by the court of its own motion, to several charges given on request of the plaintiff, and to the refusal of nine separate charges asked by the defendant. The opinion of the court states the main points involved in these charges, and dispenses with the necessity of setting them out in full. Other exceptions were reserved during the trial, and assignments of error are based on all the exceptions. The plaintiff had a verdict and judgment for $1,500.

Brickell & Harris, and J. C. Eyster, for appellant.

Wert & Speake, *contra.*

COLEMAN, J.—Plaintiff, as administrator of Henry Griffin, who was an employè of the defendant, sues to recover damages sustained by the alleged wrongful act of the defendant, resulting in the death of the decedent. At common law, this action was not maintainable, and the right to recover, and the measure of the recovery, are purely statutory. In many States, the statute which authorizes the action, in express words defines and limits the damages to *pecuniary* compensation.—*Huntington v. Broad Top R. R. Co.*, 84 Penn. 425; *R. R. Co. v. Howard*, 80 Ill. 88; *Penn. R. R. Co. v. Ogier*, 35 Penn. 70. In this State, the statute provides that, in certain cases, the master or employer "is liable to answer in damages" to the servant or employè.—Code, § 2591. The record presents the direct question, as to what is the measure of damages under the statute, where death results.

The English act, 9 and 10 Vict., is very similar to the one under consideration. It provides, that the jury may give such damages as they think proportioned to the injury resulting from such death, to the party for whose benefit such action may be brought. Construing the English act in the case of *Blake v. Midland Railway Co.*, 18 Q. B. 93, it was held, that nothing could be recovered, except the pecuniary loss sustained by reason of the death; that the measure of damages was not the loss or suffering of the deceased, . . . and that nothing was recoverable as a *solatium*.

In the case of *Telper v. Northern R. R. Co.*, 30 N. J. L. 200, it was held, that the pecuniary loss sustained by reason of the death was the proper measure of damages, when the statute failed to prescribe otherwise. In North Corolina, the statute, in other respects similar to ours, provides that the jury may give such damages as they shall deem fair and just, with reference to the "pecuniary injury" resulting from such death. Commenting on and construing this statute with the English act, the court declared that, although the English act was not as precise and definite as the North Carolina act, inasmuch as the latter specifies "pecuniary injury," and the English omitted "pecuniary," the two acts were substantially the same, and the recovery under either was limited to the "pecuniary injury."—*Kesler v. Smith*, 66 N. C. 154.

The theory of the statute is, that those for whom compensation is provided, have a pecuniary interest in the life of the person killed; and consequently the amount of the recovery is limited to the value of such interest.—3 Wood's Railway Law, p. 1536, § 414; *Arrington v. Collier*, Phil R. 355, These principles furnish a correct exposition of our statute; and consequently we declare, under the provision of section

[Louisville & Nashville Railroad Co. v. Orr.]

2591 of the Code, neither exemplary or vindictive damages are recoverable. The purpose of this statute is entirely different from that intended by the act of Feb. 5, 1872, the object of which was to "prevent homicide."—*Sav. & M. R. R. v. Shearer*, 58 Ala. 672.

It seems that, in California, Texas, Tennessee, Missouri, Kentucky, and others, there is express provision made by statute for the recovery of exemplary or punitive damages in such cases; but any other exposition of our statute would require the exercise of legislative power—a power which belongs altogether to a different department of the government. Courts can no more amend than enact a statute.

The amount of compensation being limited to the pecuniary injury, nothing can be allowed on account of pain and suffering of the deceased, before his death, or for the grief and distress of his family, or loss of his society.—66 N. C., *supra*; 30 N. J. L., *supra*; 84 Penn., *supra*; *Donaldson v. Miss. & Mo. R. R. Co.*, 18 Iowa, 290; Amer. & Eng. Encyc. of Law, vol. 5, p. 45, and note.

The jury have no arbitrary discretion to give as damages what they may see proper, without reference to a proper basis from which to estimate them. That the jury may have proper data from which a pecuniary compensation may be fixed, it is proper to admit evidence of the age, probable duration of life, habits of industry, means, business, earnings, health, skill of the deceased, reasonable future expectations; and perhaps there are other facts which should exert a just influence in determining the pecuniary damage sustained. In proportion as all the relevant facts and circumstances of decedent's condition are brought before the jury, they will be the better prepared to ascertain correct compensation. If none of the facts and circumstances, except the bare killing and age of decedent, are in evidence, the verdict for other than nominal damages would be purely conjectural.

Some of the charges given to the jury by the court, to which exceptions were reserved, are in conflict with these principles, and should not have been given. The evidence conflicted as to whether the deceased contributed to his own death, or whether he was without fault, and was at the time acting under the rules of the company in the discharge of his duty, or in obedience to the orders of his superior co-employé. Whether the one or the other was true, depended upon the facts, to be ascertained by the jury, under proper instructions of the court.

There was testimony tending to show the presence of the conductor at the time of the injury. There was no error in ad-

mitting in evidence Rules 133, 149, 150, 155. Rule 309 was irrelevant to any questions or issue before the jury, and should have been excluded. There was no evidence that any of the brakes were out of order, and Rule 147 was irrelevant and properly excluded by the court. Railroads, like other corporations and persons, have the right to adopt reasonable rules and regulations for the government of their employès, and for their own protection; but they can not stipulate for immunity from liability for their own wrongful negligence. A rule which imposes upon an employè to look after and be responsible for his own safety, contravenes the law itself, which fixes the liability of railroads for negligence causing injury or death to their employès. Some of the provisions of Rule 130 might have been proper evidence, but, when offered as a whole, it was inadmissible.

If there was evidence to satisfy the jury that plaintiff's intestate selected a dangerous way to pass from one car to another, knowing that the way selected was dangerous, when there was a safe way apparent to him, he was guilty of such contributory negligence as to constitute a full defense to the action.—*M. & B. R. R. Co. v. Holborn*, 84 Ala. 137.

It was the duty of the defendant to furnish and maintain suitable material and appliances for the prosecution of its business, and, in the absence of notice to the contrary, the employè had the right to presume that the employer had complied with its duty in this respect, and to act upon this presumption, unless the character of his employment was such as to devolve upon him the duty of examining and seeing that the particular material and appliances were in proper condition. If such was the duty of the employè, and he negligently assumed they were in proper condition, when they were not, and the injury arose from his own failure in this respect, he would be guilty of contributory negligence.

A brakeman assumes the ordinary and known risks incident to the discharge of his duties, and where injury results from such dangers, the railroad corporation, or other employès, not being guilty of negligence or fault, is not responsible. If, in the performance of his duty, the danger to be encountered is known by the employè, and is so obvious and imminent that a reasonable prudent man would not venture upon it, an employè would not be excused from contributory negligence, if injured under such circumstances, although the danger was the result of defective material and appliances.—*Highland Ave. & Belt R. R. Co. Walters, ante*, 435.

The court has defined and declared the boundary of legitimate argument to the jury, with as much precision and clear-

[Louisville & Nashville Railroad Co. v. Fulgham.]

ness as the nature of the question will admit.—*E. T. V. & G. R. R. Co. v. Bayliss*, 75 Ala. 466; *Wolffe v. Minnis*, 74 Ala. 386; *Cross v. State*, 69 Ala. 476. When counsel trespass on the domain of unproven facts, the presiding judge should promptly set aside any verdict the jury may render, unless he is clearly and affirmatively convinced the verdict is right, and would have been the same in the absence of such unauthorized argument.—75 Ala., *supra*.

Some of the statements of counsel to the jury, to which exceptions were reserved, though unauthorized by the evidence, were not of sufficient importance to work a reversal of the cause; but there were others, which clearly transgressed the limits of legitimate argument, and would have caused a reversal, had there been no error by the court in the admission of testimony, and instructions to the jury. The court should restrain counsel, upon the request of the adverse party, within the limits of legitimate argument, and when transcended, should remove, by proper instructions, all injurious influence thereby produced on the minds of the jury.

Reversed and remanded.