# Tutwiler Coal, Coke & Iron Company v. Enslen, Admr.

## Action by Administrator to recover Damages for the Alleged Negligent Killing of Intestate.

1. *Pleading and practice; when judgment upon demurrers insufficient.*—The recital in a judgment entry that "defendant's demurrer to the complaint is by the court heard, considered and overruled," constitutes no judgment upon such demurrer, and is insufficient to present such ruling to the Supreme Court for review on appeal.

2. *Action by administrator for negligent killing of intestate; when charges properly refused.*—Where an action is brought by an administrator to recover damages for the alleged negligent killing of plaintiff's intestate, charges which instruct the jury that under certain conditions *deceased* could not recover, are wanting in clearness, and so incorrect in the use of the word "deceased" for the word *plaintiff*, that the trial court will not be put in error for refusing such charge.

3. *Action for negligent killing of child; contributory negligence as a defense.*—Between the ages of 7 and 14 years, a child is *prima facie* incapable of exercising judgment and discretion, and, therefore, incapable of being guilty of contributory negligence; but in an action to recover for the alleged negligent killing of a child between the ages of 7 and 14 years, evidence of capacity may be received, contributory negligence imputed, and such negligence shown in defense of the action.

4. *Same; same; question for the jury.*—In an action by an administrator to recover damages for the alleged negligent killing of the plaintiff's intestate, who was a boy 13 years old, where the defendant pleads contributory negligence, the question as to whether or not the intestate was capable of exercising judgment and discretion, and had the capacity to be guilty of contributory negligence, is one for the determination of the jury.

5. *Same; same; sufficiency of evidence.*—In an action to recover damages for the alleged negligent killing of a boy 13 years old, the mere fact that the said boy was shown to be "bright, smart and industrious", without more, is insufficient to overcome the presumption of the want of judgment and discretion, which his age *prima facie* implies.

[Tutwiler Coal, Coke & lron Co. v. Enslen, Admr.]

6. *Appeals; rulings of trial court not reviewed when not insisted on in argument of counsel.*—The rulings of the trial court which are assigned as error on appeal, but which are not insisted on in argument of counsel for appellant, will not be reviewed by the Supreme Court; and the mere statement in a brief that a charge "asserts a correct proposition and should have been given," justifies the Supreme Court in refusing to consider the ruling of the trial court upon said charge.

7. *Action to recover damages for negligent killing of child; charge to the jury.*—In an action by an administrator to recover damages for the alleged negligent killing of his intestate, who was a boy 13 years old, where it is shown that at the time of the killing the boy was in the defendant's mines, where he was employed, and the plaintiff's testimony tended to show that he was in the discharge of the duties of his employment, while the defendant's testimony tended to show that at the time of the killing he was at a place in the mines where his duties did not require him to be, a charge which instructs the jury that if they believe from the evidence "that plaintiff's intestate was at a place other than where his duties required him to be at the time he was injured; and that he had not been told by any one to whose orders he was bound to conform, to go to the place where he was injured, then the jury must find for the defendant," is erroneous and properly refused.

2. *Same; same*—In such a case, charges which ignore the fact of the intestate's tender age and childish instincts and that he was put to work, not only in a dangerous place, but in proximity to other dangers, are erroneous and properly refused.

9. *Same; same.*—In an action by an administrator to recover damages for the alleged negligent killing of his intestate, who was a boy 13 years old, where it is shown that at the time of the killing· the boy was at work in the mines of the defendant, and the testimony for the plaintiff tended to show that he was injured while in the discharge of his duties, and 'the service he rendered, with the knowledge of the defendant, demanded his presence at the place where the injury was received, and the testimony for the defendant was in conflict with this testimony of the plaintiff, the general affirmative charge requested by the defendanc was properly refused.

10. *Same; same; measure of damages.*—In an action by an administrator to recover damages for the alleged negligent killing of his intestate, who was a minor, a charge which instructs the jury that the damages recoverable "are com-
22·

[Tutwiler Coal, Coke & Iron Co. v. Enslen, Admr.]

pensatory and you will exclude from your calculations the earnings and savings of deceased up to the age of 21 years, and in this case calculate what is earned and saved after that age," is properly refused as being confusing and abstract, in that it instructs the jury that they should calculate what the deceased earned after he was 21 years of age.

11. *Same; same; same.*—In an action by an administrator to recover damages for the alleged negligent killing of his intestate, the recovery is for the money value of the intestate's life, having regard to his age, probable duration of life, habits of industry, means, business, earnings, health, skill and reasonable future expectations, and not what the intestate's heirs and distributees were likely to have received from his estate; and, therefore, in such a case, a charge which instructs the jury that the measure of damages that can be recovered is what the intestate's heirs and distributees would likely have received from his estate, considering the evidence as to the age of the deceased, etc., is erroneous and properly refused.

12. *Same; same; same.*—In such a case, it is only when it appears that there are no distributees of the decedent's estate to whose benefit the recovery will ensure, that nominal damages only can be given, and in other cases the recovery is limited to the pecuniary loss or injury sustained by the distributees of the decedent's estate as determined by the jury from a consideration of the evidence as to the age of the deceased, probable duration of life, habits of industry, means, business, earnings, health, skill and reasonable future expectation.

13. *Action for negligent killing of employee; admissibility of evidence.*—In an action by an administrator against a mining corporation to recover damages for the alleged negligent killing of plaintiff's intestate, while at work in the defendant's mines, where the defendant sets up the contributory negligence of the plaintiff's intestate in that at the time he was injured he was at a place where his duties did not require him to be, it is competent for the plaintiff, upon the cross-examination of one of the defendant's witnesses, to show that in the discharge of the duties assigned to the intestate it was necessary for him to be at the place where he was killed.

APPEAL from the Circuit Court of Jefferson.
Tried before the Hon. A. A. COLEMAN.
This was an action brought by Charles F. Enslen, as administrator of the estate of Delius Jones, against

the Tutwiler Coal, Coke & Iron Co., to recover damages for the alleged negligent killing of plaintiff's intestate in the defendant's mines. The complaint as originally filed contained five counts, but the court gave the general affirmative charge in favor of the defendant on all of the counts in the complaint except the first. The first count of the complaint was in words and figures as follows: "Plaintiff claims of defendant fifteen thousand dollars, as damages, for that heretofore, to-wit, on April 17th, 1899, defendant was operating a certain coal mine at or near Murray, in Jefferson county, Alabama, known as No. 4, of Slope 4; that plaintiff's intestate, who was a minor, was in the service or employment of defendant, and while engaged in or about the said service or business of defendant in said mine, a part of the roof or top of said mine fell upon said intestate, and as a proximate consequence thereof he was so injured that he died. Plaintiff avers that said part of said roof fell upon said intestate as aforesaid, and he was injured and caused to die as aforesaid, by reason and as a proximate consequence of a defect in the condition of the ways, works, machinery or plant used in or connected with the said business of defendant, which defect arose from, or had not been discovered or remedied owing to the negligence of some person in the service or employment of defendant, and entrusted by it with the duty of seeing that said ways, works, machinery or plant were in proper condition, viz.: said roof, or a part thereof, which fell upon said intestate as aforesaid, was not sufficiently stable or secure or sufficiently protected from falling."

There was a demurrer interposed to this count of the complaint, assigning several grounds, but it is unnecessary to set out these demurrers. The minute entry relative to the demurrer was as follows: "Defendant's demurrer to the complaint is by the court, heard, considered and overruled." The defendant pleaded the general issue, and by special plea set up the contributory negligence of the plaintiff's intestate in that at the time he was killed, the plaintiff negligently, and contrary to the orders and warnings of the defendant, had gone to a place in the mines where his duties did not require him to be. Issue was joined on these pleas.

It was shown by the evidence that Delius Jones was a negro boy 13 years of age, and was employed in the defendant's mine as a "chainer;" that the duties of a chainer were to change the chain that hauled the cars out of the mines from the empty cars to the loaded cars and *vice versa,* and to see that all of the cars were properly coupled before being hauled out of the mines; that the duties of the chainer required him to be in the main slope of the mine; that it was along the main slope of the mine that the empty and loaded cars were carried; that for a considerable distance down the main slope there was one track; that after going down some distance there was a switch on the main track, and from this switch down into the mines there were two tracks, one of which was used by loaded cars and the other for empty cars; that about 50 feet from the switch was what is known as a "safety hole," which was placed there in order that the chainer might get into it, thus being out of danger of the cars being hauled out of the mines, if they should break loose and run back into the slope; that about 50 feet beyond this safety hole along the track there was what was called "the first right cross entry," which went into another portion of the mines, and along which entry there was a track for the cars to run. It was further shown that the duties of the chainer required him to be about the switch above the right cross entry, in order that he might change the chain from the empty cars let down in the mines on to the loaded cars which were to be drawn up.

The plaintiff's intestate, Delius Jones, was shown to have been along the main slope opposite the right cross entry at the time he was killed; that his death was caused by a rock falling from the roof of the main slope on him. The plaintiff's evidence tended to show that the rock which fell on his intestate had been loose for several days; that the fact had been called to the attention of one James Kelso, who was the bank boss of the mines, and whose duty it was to see that the slope of the mine, in every respect, was kept in proper repair; and that when rock are loose in the roof of the slope the best way to get rid of them is to punch them down, and if this is not done then the rock should be propped up. There was some evidence introduced by the plaintiff

tending to show that while he was engaged as a "chainer" it was also his duty to turn cars as they came down from one track on to the other, and that he was so engaged in turning cars from the track in the main slope on to the track in the first right cross entry when the rock fell on him. There was other evidence for the plaintiff tending to show that his duties as a chainer required him to go as far down into the slope as the first right cross entry, and even below it, for the purpose of inspecting the cars, to see if they were properly coupled before being hauled out of the mine.

The testimony of the mother of Delius Jones, plaintiff's intestate, in reference to said Delius Jones, was as follows: "He was 13 years old when he was killed. Would have been 14 on the 25th day of August following. He was a bright, smart, industrious boy, and earned 75 cents a day. He lived with me, and worked in the mines of the Tutwiler Coal, Coke & Iron Co. He worked every day that the mines worked. He was killed on the 17th day of April, 1898, by a rock falling on him. The rock that fell on him burst his bladder. Delius sometimes drew his money, and sometimes I drew it for him. When he drew it, he always brought it and turned it over to me. He had been chaining at the mines for about two months. Before that time he had been trapping, and got 50 cents a day. For chaining he got 75 cents a day. He was a healthy boy, and stout for his age. He had good habits, and never wasted his money."

James Kelso, a witness for defendant, testified that he was the bank boss of the defendant's mines at the time the plaintiff's intestate was killed; that he hired Delius Jones, and that at the time he was killed he was a chainer; that in assigning him to his duty he, Kelso, carried him to the place where he was to work, and instructed him to be careful and remain at that place and get into the safety hole when he was not engaged in coupling and uncoupling the chain; that his place when not so engaged in coupling and uncoupling the chain and in throwing the switch was in the safety hole, and that Delius Jones had no business down the slope as far as the right cross entry; that it was not part of the chainer's duty to inspect the loading of cars; that Delius Jones had no right to go where

he was killed, and his duties did not require him to go further down the slope than the safety hole. · The witness Kelso further testified that he did not know that the rock which fell on Delius Jones was loose, that he had never been notified by any one that it was in a dangerous condition, and that while it was his duty to inspect everything as fully as he could, he had never made an inspection of the roof at the place where the rock fell.

John Capps, a witness for the defendant, testified that he was what is known as a "boss driver" for the defendant, and was under the superintendence of Kelso. The testimony of this witness was substantially the same as that of Kelso. In reference to the duties of the plaintiff's intestate, the witness further testified that he was at the place where he was hurt by the request of the driver, and that Delius Jones, the intestate, had gone there to assist the driver in turning the car from the main slope into the right cross entry, and that his duties did not require him to be there. The other facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe from the evidence that Delius Jones had been warned by James Kelso not to go to the point where he was injured and in disregard of such orders he went to said point, then he was guilty of contributory negligence, and can not recover in this suit." (2.) "If the jury believe from the evidence that Delius Jones knew of the defect complained of in the complaint, and went under the rock that injured him voluntarily and without being required to go there in the discharge of his duties, then he was guilty of contributory negligence, and can not recover in this suit." (3.) "I charge you, gentlemen of the jury, that it was not defendant's duty to warn plaintiff's intestate of dangers at points in its mine where it was not necessary for him to go in the discharge of his duties, and if the jury believe from the evidence that plaintiff's intestate was injured at such point, then defendant was guilty of no negligence, and plaintiff can not recover

[Tutwiler Coal, Coke & Iron Co. v. Enslen, Admr.]

in this suit." (4.) "If the jury believe the evidence, they must find for the defendant under the first count of the complaint." (5.) "If the jury believe from the evidence that plaintiff's intestate was at a place other than where his duties required him to be at the time he was injured, and that he had not been told by any one to whose orders he was bound to conform to go to the place he was injured, then the jury must find for the defendant." (6.) "I charge you, gentlemen of the jury, that there is no evidence that plaintiff's intestate was ordered by defendant or any one authorized by it to be at the place where he was injured." (7.) "I charge you, gentlemen of the jury, that should you get so far as to estimating the amount of damages, the damages to be allowed are compensatory, and you will exclude from your calculations the earnings and savings of deceased up to the age of 21 years, and in this case calculated what is earned and saved after that age." (8.) "I charge you that if the jury believe the plaintiff is entitled to recover, the measure of damages is what the intestate's heirs and distributees would likely have recovered from his estate, considering the evidence as to the age of the deceased's probable duration of life, habits of intestate, means, business, earnings, health, skill and reasonable future expectations." (9.) "I charge you, gentlemen of the jury, that the law does not require that the defendant should anticipate and provide against the negligence of plaintiff's intestate in discharging orders, and if the jury believe from the evidence that Delius Jones was injured by reason of having disobeyed the orders given him by defendant, through its agent, James Kelso, the plaintiff is not entitled to recover in this suit." (10.) "I charge you, gentlemen of the jury, that if you believe the evidence in this cause, the plaintiff is not entitled to recover under the first count of the complaint." (11.) "I charge you, gentlemen of the jury, that there is no evidence in this cause to show that Delius Jones went to the place where he was injured at the orders of, or with the consent of, the defendant." (12.) "If the jury believe the evidence in this cause, they must find for the defendant." (13.) "If the jury believe from the evidence in this cause that the plaintiff is entitled to a verdict, under the evidence in this

cause they can not find a verdict for plaintiff for more than nominal charges." (14.) "There is no evidence in this cause that plaintiff's intestate did not consume all his earnings in his own support."

There were verdict and judgment for the plaintiff, assessing his damages at $1,550. The defendant appeals, and assigns as error the several rulings of the trial court to which evceptions were reserved.

GARRETT, UNDERWOOD & THACH, for appellant.—The testimony of Capps and Kelso was clear that Delius Jones had been instructed not to go to the point where he was injured. If, in disobedience of these instructions, he went and was injured, surely it cannot be said plaintiff can recover where his intestate was guilty of such flagrant negligence.—*Parker v. Port. Pub. Co.*, 31 Am. Rep. 262; *M. & E. Ry. Co. v. Thompson*, 77 Ala. 448; Beach on Contributory Negligence, 370; *Ib.* 350; *Ib.* 368; *Ib.* 374.

The first and second charges requested by the defendant should have been given.—*Campbell v. Lunsford*, 83 Ala. 512; *Ala. Connellsville, etc., v. Pitts*, 98 Ala. 285.

Charge No. 7 is directly supported by the authority of the Supreme Court of Alabama, and should have been given.—*Ala. & Connellsville C. &c. Co. v. Pitts*, 98 Ala. 285; *Williams v. S. & N. R. R. Co.*, 91 Ala. 635.

Charge No. 8 lays down the correct rule for measuring the damages.—*James v. R. & D. R. R. Co.*, 92 Ala. 231.

There was no evidence in this cause that Delius Jones saved any of his earnings, or that there was any dependency on him, nor was there any evidence as to whether or not it was necessary to consume all his earnings in his own support. The bill of exceptions clearly shows this, so there was no evidence upon which to predicate a verdict for substantial damages. Consequently refused charges 13 and 14 should have been given.—*James v. R. & D. R. R. Co.*, 92 Ala. 231; 98 Ala. 285.

BOWMAN & HARSH, *contra.*—The question asked the witness Capps upon the cross-examination had for its object the production of the evidence which was mate-

rial and relevant to the issues involved in this case. It was proper for the court to allow such questions to be asked.—*Tobias v. Triest*, 103 Ala. 664; *Railway Co. v. Corpening & Co.*, 97 Ala. 681.

The first and second charges ignore the fact that plaintiff's intestate was under 14 years of age. Between 7 and 14 years, it must always be a question for the jury to say whether a child is guilty of contributory negligence, where there is evidence tending to show what would be contributory negligence in one of maturer years.—*Pratt C. & I. Co. v. Brawley*, 83 Ala. 371; *Lovell v. DeBardedeben Coal & Iron Co.*, 90 Ala. 15; 2 Bailey's Personal Injuries, § 2768.

The third charge ignores the fact of intestate's tender age and childish instincts, and that he had been put to work not only in a dangerous place, but in proximity to other danger where the natural instincts of a child might call him to go, notwithstanding he might not be required by the strict necessity of his business to go to that place.—*Ala. Connellsville Coal &c. Co. v. Pitts*, 98 Ala. 285; 2 Bailey's Personal Injuries, §§ 2766, 2714.

The charges requested by the defendant, relating to the measure of damages recoverable by the plaintiff, asserted incorrect propositions of law and were properly refused.—*Ala., etc., C. & I. Co. v. Pitts*, 98 Ala. 285; *Williams v. R. R. Co.*, 91 Ala. 635; *St. L., etc. Co. v. Davis*, 18 S. W. Rep. 628; *Birkett v. Ice Co.*, 110 N. Y. 504.

HARALSON, J.—1. The court gave the general charge in favor of defendant on all the counts in the complaint except the first, which count, as the appellant states in brief, is on the first subdivision of the employer's liability act, providing for the liability of master or employer to servant or employe for injuries, "When the injury is caused by reason of any defect in the condition of the ways, works, machinery or plant connected with or used in the business of the master or employer."—Code, § 1749, subdiv. 1.

There was a demurrer interposed to this count, upon several grounds; but there was no judgment upon the demurrer, and the sufficiency of the count is not be-

fore use.—*Ala. Nat. Bank v. Hunt,* 125 Ala. 512. But as to the sufficiency of the count, see *Ga. Pac. R. Co. v. Propst,* 85 Ala. 203; *A. G. S. R. R. Co. v. Davis,* 119 Ala. 572; *Armstrong v. Montgomery St. R'y Co.,* 123 Ala. 233.

2. The 1st and 2d refused charges are wanting in clearness,—incorrect, in fact, in stating that under certain conditions, Delius Jones, the *deceased,* could not recover. The defect is slight, and it may be inferred, that the meaning of the party drawing the charge was that the *plaintiff,* under the conditions hypothesized, could not recover. The court had no right to change the language of the charges, and, being faulty, we are not disposed to put the court in error for refusing them. Furthermore, we apprehend the charges may have been refused for the reason, that they ignore the fact plaintiff's intestate was under fourteen years of age. Whether he could be guilty of contributory negligence or not was a question of fact to be determined by the jury, dependent upon the other fact, whether it had been shown that deceased had capacity to be guilty of contributory negligence. Between seven and fourteen, a child is *prima facie* incapable of exercising judgment and discretion, but evidence may be received to show capacity.—*Pratt Coal & Iron Co. v. Brawley,* 83 Ala. 371; *Lovell v. DeBardeleben C. & I. Co.,* 90 Ala 15; *Jefferson v. B. R'y & E. Co.,* 116 Ala. 299.

It may be true, that contributory negligence may, under some conditions, be imputed to an infant under fourteen years of age, as a matter of law, as where the evidence of his care and prudence and his capacity to exercise judgment and discretion is not in conflict, and different inferences cannot be drawn therefrom. The fact, however, that the infant was shown to be "bright, smart and industrious," without more, is not sufficient to overcome the presumption that want of discretion which his age *prima facie* implies; for, an infant may be all this and yet be so wanting in judgment and discretion as to make him rash and imprudent.—*Ala. Midland R'y Co. v. Marcus,* 115 Ala. 395.

3. The 3d, 9th and 10th refused charges are not insisted on in argument. The statement in brief, that a charge "asserts a correct proposition and should have

been given," or that a charge "should have been given," contains no reason or argument for its giving, and justifies the court in refusing to consider it.—*Olmstead v. Thompson*, 91 Ala. 127; *Williams v. Spraggins*, 102 Ala. 424, 431.

As a sufficient justification for the refusal of the 5th charge,—applicable also to the 3d and 5th,—we may appropriately adopt the language of the appellee's counsel, that it "ignores the fact of intestate's tender age and childish instincts, and that he had been put to work, not only in a dangerous place, but in proximity to other danger, where the natural instincts of a child might call him to go, notwithstanding he might not have been required, by the strict necessity of his business, to go.—*Ala. C. C. & I. Co. v. Pitts*, 98 Ala. 285; 2 Bailey's Per. Injuries, §§ 2714, 2766."

4. There was testimony tending to show that the intestate was injured while in the discharge of his duties, and that the service he rendered, with the knowledge of defendant,—the benefits of which it is to be presumed defendant accepted,—demanded his presence at the place where the injury was received. The testimony of defendant was in conflict, however, with the above. The disputed fact, therefore, became one for the consideration of the jury. It follows, that charges 4 and 12 were properly refused. Charges 6 and 11 attempt to raise a question not within the issue. There is no count in the complaint, to which the charges are pertinent. Charge 10 is not insisted on in argument.

Charge 7 was an improper instruction. Its last clause,—that the jury should calculate what was earned and saved (by deceased) after he was 21 years of age, —is confusing and abstract, since there could have been no earnings by deceased after he was 21, when he was killed before reaching that age.

The language of refused charge 8 is faulty in the use of the expression, "When the heirs and distributees would have likely have received." The recovery is for the money value of the intestate's estate, having regard to his age, probable duration of life, habits of industry, means, business, earnings, health, skill, reasonable future expectations, etc., and not what the intestate's heirs and distributees would likely have received from his estate. They could only receive what is left after

paying costs and expenses of administration, and the suit can be maintained only by the personal representative of the deceased; the recovery being for the benefit of his distributees.—Code, § 1751; *James v. R. & D. R. R. Co.*, 92 Ala. 231; *L. & N. R. R. Co. v. Orr*, 91 Ala. 548.

5. The father is entitled to the earnings of his minor child, unless the child has been emancipated by him. There is no evidence to show whether the intestate had a father or not, or that he had ever been emancipated. The presumption, in the absence of proof, is, that an infant has a father; and, because it is in the natural and usual order of things, it is also to be presumed that the father supports him, and in turn receives and appropriates his earnings. The recovery under the statute is for the probable value of intestate's estate, had he lived out his expectancey. If the father appropriates his minor child's earnings, as he has the right to do, it would follow, that the earnings of the child during minority could not be considered in estimating the probable value of his estate.—*A. & C. Co. v. Pitts*, 98 Ala. 285. His earning capacity, however, during minority is competent evidence to show what his earnings would have been, had he lived to and beyond maturity. As pertinent to this inquiry, it has been held: "That the jury may have proper *data* from which a pecuniary compensation may be fixed, it is proper to admit evidence of age, probable duration of life, habits of industry, means, business, earnings, and perhaps other facts."—*L. & N. R. R. Co. v. Orr*, 91 Ala. 548; *James v. R. & D. R. R. Co.*, 92 Ala. 231; *McAdory v. L. & N. R. R. Co.*, 94 Ala. 272. Moreover, the evidence shows that the intestate left distributees of his estate. As has been said, it was not shown that he had no father, and it is shown that his mother was alive, each of whom on his death was entitled to equal distribution in his estate. It is only when the intestate has no distributees, that nominal damages only could be given. *James v. R. & D. R. R. Co.*, 92 Ala. 231. Charge 13 was properly refused, and the same thing may be said of charge 14. The mother of deceased testified that he sometimes drew his money, and sometimes she drew it for him, and that when he drew it, he always brought and turned it over to her.

[Wofford v. Meeks *et al.*]

6.　The evidence tends to show that deceased was killed at a point called the First Right Cross entry; that for the defendant, that his place of business was about 50 feet towards the mouth of the mine above that point,—at the safety hole,—and that for plaintiff, that his duties as chainer or coupler of cars, were at the cross entry, and that the cars came and went about every ten minutes.

The question was propounded on the cross to John Capps, defendant's witness: "If 8 or 10 loaded cars were coupled to the end of the chain, state whether or not they would extend below the right cross entry?" Objection was made, that the question called for irrelevant, immaterial and incompetent testimony, and that there was "no evidence tending to show that deceased was hurt when inspecting cars to see that they were coupled." In view of tendencies of plaintiff's evidence, that the duties of deceased called him to the point where he was killed, we discover no reason why defendant's witness on his cross-examination, might not be asked the question, the direct object of which was to show a necessity or propriety for the presence of deceased at that point for the discharge of his duties, and to sustain plaintiff's evidence, in contradiction of defendant's, that his place of duty was at that point.

The judgment of the lower court is affirmed.