# Davis v. Western Railway of Alabama.

*Action by Employe for Personal Injury..*

1. *Contributory negligence—uncoupling cars while in motion.*—Where a brakeman went between cars, having double deadwoods to uncouple them, while they were being backed down grade and were pulling on the engine so that the draw was taut and without first giving the signal to the engineer for the slack, as was customary, and after he went in between the cars the engineer, in a proper manner, gave the slack, and plaintiffs arm was caught between the deadwoods, he was guilty of contributory negligence.

2. *Orders from foreman to brakeman are to be obeyed in safe manner.* An order by a foreman, whom plaintiff was bound to obey, "to cut off one car," given when the foreman was five or six car lengths away, did not justify plaintiff in undertaking to uncouple the cars while in motion, in the absence of any emergency attending the order.

3. *Selection of dangerous way for doing act when safer one apparent.* If the plaintiff knowingly selected a dangerous way for doing an act in the line of his duty, while a safer one was apparent and open to him, and he was thereby injured, he is guilty of contributory negligence and cannot recover

4. *Employe assumes risks of obeying order by foreman involving risks of obvious peril.*—Where an order is given by a foreman to a brakeman to uncouple cars in motion, under such circumstances that, by complying therewith, he would incur risks of obvious peril, such as a reasonably prudent man would regard as extra hazardous if obeyed, the employe in obeying assumes the risk himself.

APPEAL from the Circuit Court of Montgomery.
Tried before the HON. JOHN R. TYSON.

[Davis v. Western Railway of Alabama.]

This action was brought against the appellee, The Western Railway of Alabama, by the appellant, Francis M. Davis, who was employed by the defendant as a switchman, to recover for damages inflicted upon the plaintiff, by getting his arm mashed, while trying to uncouple a car attached to a moving train on defendant's road, in obedience to orders from a superior officer, whom he was bound to obey.

The facts of the case are sufficiently stated in the opinion. Upon the introduction of all the evidence, the court gave the general affirmative charge in favor of the defendant, to the giving of which charge the plaintiff duly excepted. From a judgment in favor of defendant, the plaintiff appeals, and assigns as error, the giving of the charge in favor of defendant, and the rendition of judgment in its favor.

FARNHAM & CRUM, for the appellant.—It must appear that the contributory negligence of plaintiff was the direct or proximate cause of the injury, to defeat a recovery.—*K. City, M. & B. R. R. v. Burton,* 97 Ala. 240 (12th So. 88) ; *L. & N. R. R. v. Hurt,* — Ala. —, (13th So. 130) ; *M. & O. R. R. v. George,* (Ala.) 10 So. 150.

It clearly appears that plaintiff was acting under the orders and direction of the foreman, whose orders and directions he was bound to obey, and he is not guilty of contributory negligence, while so acting in a reasonably prudent manner, which will defeat a recovery.—*R. & D. R. R. Co. v. Chasteen,* 88 Ala. 591; *M. & O. R. R. v. George, supra; A. G. S. R. R. v. Richie,* 99 Ala. 346.

The mere fact that plaintiff performed work, knowing it to be dangerous, does not of itself make him guilty of contributory negligence, *it must appear that he performed that which was dangerous in a negligent manner,* and no such fact appears from this count.—*M. & B. R. R. Co. v. Holborn,* 84 Ala. 133.

There was evidence relevant to the issues formed, to be submitted to the jury in determining the real cause of the injury, from which they could have found that the act of the engineer in giving the "slack" or jamming the cars together was negligent, in that he did so without being signaled or that he did so with greater force than was necessary or usual, by reason of which plaintiff was knocked or jammed against the dead-woods

which caused the injury; and there being no conflict, the affirmative charge could have been more properly given for the plaintiff than for the defendant.

While it is true that plaintiff testified that it was safer to give the engineer the signal to make the "slack" before going in between the cars, no duty will arise to give this signal unless the "slack" is needed, and defendant will not be excused, on this account, when it appears that the engineer gave the "slack" in a negligent manner and when he was looking at plaintiff and knew him to be between the cars with his back towards the engineer, and without any warning to him that the "slack" would be made.

While it is said in the case of Richie, 99 Ala. 346, that the engineer might have presumed that plaintiff was not in a dangerous position, in the present case, the injury was not caused because of plaintiff's voluntarily placing his arm in a dangerous position, but because of the sudden jamming of the cars without warning by which plaintiff was knocked against the dead-woods, and his arm involuntarily placed in the position it was, when injured.

GEORGE P. HARRISON, for the appellee.—Under the facts proven, plaintiff performed the duty of uncoupling in a careless manner, to-wit, in going between moving cars without signalling the engineer to slack, which he testified was customary and safe—and in not holding his arm above the dead-woods.—3d Headnote, *A. G. S. R. v. Richie*, 99 Ala. 347.

Referring to the argument of my associate counsel on the exceptions to evidence, and the authorities cited by them, it is insisted that if there was error in either of the rulings of the court on the pleading or the admision of evidence, it was error without injury.

The plaintiff according to his own evidence was clearly guilty of contributory negilence, which would defeat his recovery; even if every act, averred in the counts to which demurrers were sustained, and every act sought to be proven by the evidence excluded, had been admitted and proven.

There is nothing averred, proven or sought to be proven in this case, which amounts to wilful, wanton or reckless negligence, Hence plaintiff's contributory neg-

ligence should defeat a recovery, and sustain the affirm-
ative charge.

LOMAX & LIGON, for the appellee.—Without arguing
the assignment of error in sustaining the demurrers of
the defendant, we contend if there was error it was with-
out injury, under the facts in the case, and that plaintiff
received full benefit of the issues under the other counts
of the complaint.—*Brownley v. B. Mineral R. R. Co.*, 95
Ala. 397; *Gilman v. Jones*, 87 Ala. 704; *Sharp v. First
National Bank*, 87 Ala. 644.

The affirmative charge was properly given at the re-
quest of the defendant. The testimony shows that the
plaintiff was guilty of contributory negligence, which
would bar a recovery. Davis went in between the mov-
ing cars in the attempt to make a coupling and knew or
ought to have known the danger of uncoupling cars as
well as the said Watts or any other employé. Watts
simply signalled Davis to "cut off" a car. Davis went
in between the cars while they were moving of his own
volition with his eyes open to the danger and without
giving the customary signals; in so doing he was guilty
of such negligence under the facts in the case as would
prevent a recovery.—Beach on Contributory Negligence,
Sec. 37. A party cannot knowingly expose himself to
danger and then recover damages for an injury which
he might have avoided by the use of a reasonable pre-
caution.—*Lake Shore &c. R. Co. v. Clemins*, 5 Brad. 77.
The employé is required to use ordinary prudence to
avoid the injury.—*Highland Ave. & Belt R. R. Co. v.
Walters*, 91 Ala. 436.

Davis assumed the ordinary and known risks incident
to his duties and was not excusable in encountering a
known danger (such as going in as he did to uncouple
moving cars) so obvious and imminent that a man of rea-
sonable prudence would not have attempted it.—*L. & N.
R. R. v. Orr*, 91 Ala. 548.

Davis' own negligence contributed proximately to his
injury; he could not have recovered unless there was
intentional wrong on the part of the defendant or its
agents.—*Birmingham Ry. & Elec. Co. v. Allen*, 99 Ala.
359; *R. R. Co. v. Webb*, 90 Ala. 29; *R. R. Co. v. Meadors*,
95 Ala. 137.

There was no conflicting evidence, no different infer-

ences could reasonably be drawn from the evidence, the plaintiff failed to make out his case, and the affirmative charge was properly given for the defendant.—*Bromley v. B. Mineral R. R. Co.*, 95 Ala. 404 ; *R. R. Co. v. Ingram*, 98 Ala. 395.

HARALSON, J.—1. We all know, while it is not necessarily or inevitably a perilous thing, under any circumstances, for a switchman to go in between the cars of a moving train to uncouple them, that generally speaking, it is a habit attended with more or less danger. There was no proof on that subject on the trial of this cause. But, common experience teaches us that there are perils attending such a custom, and the books abound with instances illustrative of it. It is of general notoriety, and we may, therefore, take judicial notice of the fact, that the dangers of such a practice are so well recognized, that many railroad companies have deemed it necessary to promulgate rules forbidding it. The evidence in this case tends, without conflict to show, that the two cars between which plaintiff was injured, were double deadwood or buffer cars, obviously more dangerous to go between for the purpose of coupling or uncoupling than between the cars not having the double deadwoods. He testified, when he started to uncouple the cars, he got one foot on the inside of the track, and holding on to the corner of the car in front of him with his left hand, leaned his body towards the centre, and took hold of the pin with his right, and had hold of it, when the slack was given,—and the front car, or the one behind him, struck him and knocked him against the deadwoods,—which were necessarily between him and the drawhead,—and the sleeve of his coat was caught between the drawheads. This shows that the deadwoods were on the one side and the other of the drawheads, and were of the double pattern. In the *L. & N. R. Co. v. Boland*, 96 Ala. 626, in speaking of cars of this pattern, and of the dangers of coupling them, we said, that the double deadwoods were so located with reference to the drawhead that it was impossible to see one without the other ; that they were on each side of the drawhead, and a view of the buffers and drawhead, as attached to the car, should be sufficient notice to a man of average intelligence of the risk incident to the coupling of such

a car; that ordinary observation could not fail to disclose to a brakeman the difference between these and other cars without the double deadwoods, and that a higher degree of care was necessary to be exercised in coupling them.

The plaintiff in this case was a man, as shown, of thirty years of age, and had been employed in the business of switching cars and working on railroads for about nine years; had been working in defendant's yard about a year, and must have had full knowledge of the dangers attending the service. The evidence further shows, that the track at the place of the accident, was either down grade, in the direction the cars were moving, or that they had been given such a shove or kick, —in bringing them; by order of the plaintiff, onto this track from another,—as that they were moving more rapidly than the engine. The draw was taut, at the time, so that it became necessary, in giving the slack, to enable the pin, coupling the cars, to be removed, to propel the engine backward, faster than the cars were moving, in order to run them together, and thus give the necessary slack to admit of the desired uncoupling. The plaintiff makes this plain. The cars were moving backwards, towards the north, when plaintiff went between them. He was on the left hand side of them. He says, "I went in between the cars and caught hold of the pin, and as I did so, the engineer gave the slack, which means driving the cars together, and the front car struck me. * * I mean by slack, that sometimes it is necessary to shove the cars together, so as to get the pin out." It is evident, that when an engine is shoving cars, the deadwoods are already together, and the slack is already on, so that the coupling pin, without more, can be removed. The very opposite of this was the condition of this train. The cars by impetus of a down grade, or by a kick or running switch, as it is sometimes called, were pulling against and not being propelled at the time by the engine, and the draw was taut. When the plaintiff went between the cars, he says he did so without having first given the signal to the engineer to slack. This he ought to have done, for he says, "It is the custom of the switchmen to give the signal for the slack, before going in between the cars. * * * It is always safer to give the engineer a signal

to let him know when a switchman is going in between the cars, and to have the slack made before going in between them." He also testified, that the engineer was looking at him, when he went to uncouple the cars, and he gave the slack, "this time, harder than was necessary." As soon as plaintiff's sleeve was caught by the drawhead, he says he signaled the engineer to stop, and continued to do so, until the cars did stop; they had moved about one car length when his arm was drawn between the deadwoods, and two or three lengths before they stopped. What particular force it was necessary for the engineer to have given his engine, to overcome the forward impetus of the cars ahead of him, it is impossible to tell, and he must not have known, exactly. Just the amount necessary to relieve the tension and allow the uncoupling to be done, however, was what was necessary, and this he undertook. Under the circumstances, when this was accomplished, if necessary to withdraw the force, by stopping the engine, the plaintiff was in position to know, and to signal him to that effect. Why should not the engineer have continued the application of the force designed to relieve the tension at the drawhead, until warned by the brakeman that it was overcome, and the uncoupling effected? That the engineer acted with promptness is made clear by the evidence of the fireman, Harris, introduced by plaintiff, who had had thirteen years experience in the business. He deposed, that he did not see the plaintiff go in between the cars, but he saw him give the signal to stop; that the engineer saw this signal also, and put on brakes and stopped the engine just as soon as possible; that he saw nothing wrong about the engine, but it slipped a little after the brakes were put on, but this was on account of the dew on the track. He repeated, "The engine was stopped as quick as possible when the plaintiff gave the signal."

The plaintiff's own evidence, therefore, fails to show that the engineer was guilty of any violation of duty on the occasion, but it does make it clear, that in going in between these cars, having double deadwoods, at the time and under the circumstances he did, he was guilty of undertaking an obvious peril, in violation of a known custom among brakeman,—to signal for a slack before undertaking it,—which he admits was always safer to

[Davis v. Western Railway of Alabama.]

be done. We have heretofore said, that the act of un-
coupling cars while in motion, by going in between
them, does not necessarily constitute contributory negli-
gence, under all circumstances, (*M. & C. R. R. v. Gra-
ham*, 94 Ala. 553) ; but it is certainly a hazardous busi-
ness, at best, and one which, in favor of human life and
limb, ought to be discountenanced. If ever justified,
however, it certainly could not be done under the cir-
cumstances of this case.

2. The plaintiff in this instance, seeks to justify his
assumption of the dangers he encountered in going be-
tween the cars of this moving train to uncouple one of
them, on the ground that he was directed to do so, by
the foreman, whose orders he was bound to obey. But,
this is a misconstruction of the order. The foreman, as
the evidence shows, at the time he directed the plaintiff
to uncouple the car, was five or six car lengths away
from and ahead of plaintiff, and the order, after
gaining plaintiff's attention, was simply, to "cut off one
car." It is not shown that there was any emergency
attending the order. It was at a time and place, when,
it may be reasonably inferred, there was no necessity
for any haste, or the assumption of any danger by plain-
tiff, in complying with the order. To have obeyed the
order, it does not appear there was any necessity for
plaintiff to go in between the cars, when they were mov-
ing. Without any unnecessary delay, the train could
have been brought to a standstill, and the order of the
foreman strictly and promptly obeyed, so far as appears,
without any danger to plaintiff. Unless the order itself,
implied to the contrary,—and its terms and the circum-
stances do not do so,—we are to presume it was intended
by the foreman, that the plaintiff should comply in a
manner safe to himself.—*Richmond & Danville R. Co. v.
Bivins*, 103 Ala. 142 ; *Pennsylvania Co. v. Hankey*,
93 *Ill.* 583. And if the plaintiff knowingly select-
ed a dangerous way, and a safer one was apparent and
open to him, and he was thereby injured, he is guilty of
contributory negligence and cannot recover.—*Bivins
Case, supra; Railroad Co. v. Orr*, 91 Ala. 548 ; *Railroad
Co. v. Holborn*, 84 Ala. 137.

3. If the order given by the foreman, however, were
construed as one to the plaintiff to uncouple the cars
while in motion, it may be said, that plaintiff was un-

der no obligation to obey it without assuming the risk himself, if by so doing, he incurred the risks of obvious peril, such as a reasonably prudent man would regard as extra hazardous. That plaintiff did incur such risk is beyond question.—*Rome & Decatur R. R, Co. v. Chasteen*, 88 Ala. 592; *Kansas City M. & B. R. R. Co. v. Burton*, 97 Ala. 254; *Delvin v. R. R. Co.* 87 Mo. 545; *R. R. Co. v. Bartee*, 5 Ohio St. 541; *Wood's Master & Servant* § 387.

This case furnishes another instance of a railroad employe, who, as his length of service and skill increased, became the more careless, in assuming risks, which, in the beginning, he would have avoided.

There is no evidence tending to show that the engineer or fireman was guilty of wilful, wanton or intentional negligence, and even, if either of them, or the company was guilty of any simple negligence in the premises, the plaintiff, on account of his own negligence, contributing proximately to the injury he received, cannot recover.

The court did not err in giving the general charge for the defendant.

In the view we take of the case, it is unnecessary to consider other questions reserved.

Affirmed.