(78 South. 718)

RED EAGLE COAL CO. v. THRASHER.
(2 Div. 153.)

(Court of Appeals of Alabama. April 9, 1918.)

1. MASTER AND SERVANT ⬡124(5)—INJURIES TO SERVANT—SAFE PLACE TO WORK.

Where experienced miner, competent to sound roofs, on going into room, sounded the rock and thought it safe, and it fell upon him, the master was not liable as for negligence in failing to inspect or discover the defect.

2. MASTER AND SERVANT ⬡124(5)—INJURIES TO SERVANT—OBEDIENCE TO INSTRUCTIONS.

Where servant was given general instructions to put up timber on a side track in a mine, and was injured by falling rock which he was propping, which appeared to be safe and could not have been guarded against, he could not recover on the theory that he was obeying the master's orders to make the place safe by propping that particular rock.

Brown, P. J., dissenting.

Appeal from Circuit Court, Bibb County; B. M. Miller, Judge.

Action by J. N. Thrasher against the Red Eagle Coal Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Stokely, Scrivner & Dominick, of Birmingham, for appellant. Lavender & Thompson and H. B. Logan, all of Centerville, for appellee.

SAMFORD, J. The first count of the complaint claims damages for and on account of a defect in the ways, works, machinery, or plant of the defendant, in that the roof of that part of the mine where plaintiff was set to work was cracked or had not sufficient strength or cohesive power to hold itself up, and was not properly supported, etc.; the averment being that the defect arose from or had not been discovered or remedied owing to the negligence of defendant or its superintendent, whose duty it was to see to this part of defendant's business. The evidence discloses that the plaintiff himself, two weeks before the time of the accident, had driven an air course in the mine in which the accident happened, and that two weeks prior to the time of the accident the plaintiff was working and driving a place in the coal; that, when he was doing that work, the plaintiff hired the labor and paid them out of his own money, and the company paid him for shooting it down by the ton.

The evidence further discloses that the plaintiff was an expert miner of 15 or 16 years' experience in the kind of work he was set to do; that the superintendent sent him into the mine under a general order to start an "air course"; that in doing this plaintiff and those with him "had to set some timbers, shoot some coal, and cut and shoot the top down"; that on the day plaintiff was hurt he was under general orders to go to work on the side track and put up timbers.

It was further testified to by plaintiff that he had done all kinds of work in mines, and that he had driven air courses and side tracks, and that he was an experienced miner; that he was as competent to sound roofs and tell whether the rock is safe as almost anybody; that he sounded the rock that did the hurt, and it sounded all right; that he examined the rock to see whether it was dangerous or not and whether it was safe for him to work under it or not, and made what he considered a careful examination, and while he would not say it sounded absolutely safe, "because you cannot call any rock absolutely safe," it sounded safe

enough; that he thought it was safe enough to work under; that when he first went down to go to work an examination could not be made to see whether it was safe or not, on account of the loose coal and rock that had to be removed. The final testimony of plaintiff as to his instructions was "to go down there and finish getting that coal out of the way and rock and then shoot some more."

[1] Under these circumstances it could not be said that the defect arose from or had not been discovered or remedied owing to the negligence of the defendant or its superintendent; if defect there was, it had been caused by the plaintiff himself, at a time when he was working as an independent contractor, and, according to plaintiff's own testimony, the defect would not have been discovered by an examination made by an expert and competent miner. By the same witness it appears that the examination could not have been made at all until shortly before the accident, on account of the coal and rock that had been shot down by the plaintiff himself prior to the date of the accident.

But suppose, as was said in the case of Woodward Iron Co. v. Wade, 192 Ala. 659, 68 South. 1010, the superintendent "had made an inspection in the customary and approved way, viz., by sounding the overlying rock with a hammer shortly before the accident." The testimony of plaintiff himself "demonstrates to a certainty that nothing would have been discovered indicative of loose rock or of specific danger therefrom." Hence it is clear that the accident could not have thereby been avoided. Woodward Iron Co. v. Wade, 192 Ala. 651-659, 68 South. 1008.

The same testimony refutes the allegation in the second count that Don McDonald, the superintendent, knew, or ought to have known, by the exercise of reasonable prudence in the performance of his duties, that the said portion of said mine was dangerous, and failed to notify plaintiff of same. There is no evidence that the superintendent knew of the danger, and the evidence is without conflict that upon a careful examination by an expert miner the rock appeared to be safe. This being the case, the second count was not sustained.

[2] As to the third count: According to the testimony of plaintiff, plaintiff was not given the specific order to put the prop under the rock that did the damage, but was given general instructions to "go to work on that side track and put up timber." A general instruction to a person who has undertaken to do a piece of work involving judgment, care, and skill to make it conform to the requirements for the safe operation of a plant or a mine is a far different thing from ordering a dependent servant to do a particular act or service (Woodward Iron Co. v. Wade, supra), nor is there any evidence that McDonald, the superintendent, gave to the plaintiff an order

to, place a prop under the particular rock which fell and caused the injury. Neither does it appear from the evidence that Don McDonald knew or ought to have known, by the exercise of reasonable prudence that this particular rock was any more dangerous than any other part of the rock roof of the mine.

From all the evidence in this case, as disclosed by the bill of exceptions, it would appear that the plaintiff's injury must be classed as an unavoidable accident.

The court erred in refusing to give at the request of the defendant the general affirmative charge, and for this error the judgment of the trial court is reversed, and the cause is remanded.

Reversed and remanded.

BROWN, P. J., dissents.