[Alabama G. S. R. R. Co. v. Flinn.]

# Alabama G. S. R. R. Co. v. Flinn.

### Injury to Servant.

(Decided February 15, 1917.   74 South. 246.)

1. **Master and Servant; Action for Servant's Injury; Complaint; Negligence.**—In action under Employers' Liability Act (Code 1907, section 3910), a count, charging that defendant's superintendent "negligently" ordered plaintiff to do the act causing injury, held a sufficient allegation of negligence, and it was not necessary to set out particular facts showing that it was negligence to give the order.

2. **Master and Servant; Action for Servant's Injury; Plea; Contributory Negligence.**—Plea, alleging that employee was negligent in that, "he knew or * * * ought to have known that it was dangerous to do the kind of work, * * * and that same was a danger obvious to him," yet did the work ordered and was injured thereby, held bad for not alleging that danger was obvious; the mere fact that plaintiff ought to have known it not constituting contributory negligence.

3. **Pleading; Alternative Averments; Construction.**—Alternative averments in pleading are no stronger than the weakest allegation.

4. **Pleading; Ambiguity; Construction.**—Allegations susceptible of more than one construction must be construed most strongly against the pleader.

5. **Master and Servant; Liability for Servant's Injury; Dangerous Work.** —To make an employer liable for employee's injuries resulting from ordering him to do dangerous work, it must be reasonably apparent to employer or his vice principal that the work would expose employee to some peril beyond ordinary risk and against which ordinary care would not protect him.

6. **Master and Servant; Liability for Servant's Injury; Dangerous Work; Obvious Danger.**—If the peril is obvious to the employee and he could readily avoid it in conforming to his orders, the employer has the right to assume that the employee will see and avoid the danger.

7. **Master and Servant; Liability for Servant's Injury; Dangerous Work; Inherent Danger.**—If the peril is not obvious, but inherent in the conditions under which the employee works, the employer's order to do the dangerous work is negligence, unless he warns employee.

8. **Master and Servant; Liability for Servant's Injury; "Dangerous Work;" Question for Jury.**—There is no ideal definition of how dangerous work ordered by employer need be before employee must disobey it or be chargeable with negligence, but where the danger is as apparent to employee as to employer and facts are not disputed, it is not a question for the jury.

9. **Master and Servant; Liability for Servant's Injury; Relation of Parties.**—A servant does not stand on the same footing with his master, his primary duty being obedience; and, if in discharging his duties he is injured through the master's negligence, he should be recompensed .

[Alabama G. S. R. R. Co. v. Flinn.]

10. **Master and Servant; Servant's Right to Rely on Vice Principal's Ability.**—A prudent employee may, within reasonable limits, rely upon the ability of his master's vice principal.

11. **Evidence; Opinion Evidence.**—It was proper for the court to decline to compel employee, on cross-examination to express opinion as to whether, under existing conditions, his work was dangerous, or whether danger was obvious, or to state whether he was discharged on account of a fight.

12. **Evidence; Opinion Evidence.**—As a general rule, a witness should not be allowed to state his conclusions or opinions.

13. **Evidence; Opinion Evidence; Negligence.**—It was not erroneous to refuse to allow a witness to give his opinion as to whether certain acts would constitute negligence.

14. **Evidence; Opinion; Duty of Foreman.**—Testimony as to whether it was a foreman's duty to warn employees as to the probability of their being injured was proper.

15. **Master and Servant; Servant's Injury; Plea; Contributory Negligence.**—The defendant employer in an employee's personal injury suit may not plead contributory negligence in a general form, but must plead it specially, and can prove none except as pleaded.

16. **Pleading; Matter Within Knowledge of One Party.**—Where particular facts constituting a cause of action or defense lie peculiarly within the knowledge of one party, that party is primarily required to allege and prove such facts.

17. **Evidence; Uncommunicated Motive.**—It was not erroneous to decline to allow a witness to state what he would have done had he been in the employee's position at the time of injury.

18. **Damages; Instructions; Personal Injury.**—In an employee's action for personal injury, an oral charge that the law furnished no measure of damages in such cases, and leaving the amount to the jury's discretion, was not erroneous as to damages for mental or physical pain.

19. **Trial; Instruction as a Whole.**—Where any misleading tendencies of an oral charge regarding damages in a personal injury case were cured by other parts of the charge, there was no reversible error.

20. **Damages; Action for Servant's Injury; Instructions; Permanent Injuries.**—Oral charge in an employee's personal injury suit, leaving the jury to award such damages as would reasonably compensate for permanent personal injuries, where all elements were not susceptible of exact measurement, held not erroneous.

21. **Damages; Measure of; Permanent Personal Injury.**—Where personal injury is shown to be permanent, pain and suffering, past and future, impaired health, diminished earning capacity, disfigurement, expenses of nursing and care, and other elements of damages proximately resulting may be considered, not all of which are capable of exact measurement.

22. **Damages; Measure of; Permanent Personal Injury; Susceptible of Exact Measurement.**—Where damages for permanent personal injuries are susceptible of exact measurement, the plaintiff must furnish data from which the amount may be fixed by the jury; and, if he does not only nominal damages can be recovered.

23. **Damages; Measure of; Permanent Personal Injuries; Not Susceptible of Exact Measurement.**—Pain and suffering, past and future, mutilation, dis-

figurement, or loss of an organ as elements of damages for permanent personal injuries are not capable of exact measurement, and consequently are left to the jury's discretion.

24. **Damages; Subject of; Loss of Eye.**—The loss of an eye entitles the injured party to recover some damages if the defendant is liable at all, although not capable of exact ascertainment.

25. **Trial; Refusal of Misleading Instructions.**—Requested charges were properly refused, where they possessed misleading tendencies.

26. **Damages; Action for Servant's Injury; Instructions; Future Loss.**—Instructions held erroneous in an employee's personal injury case, which sought to prevent recovery of damages for loss of any kind in the future, where the evidence showed pain and suffering and loss of an eye; such damages not being susceptible of exact measurement.

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. SMITH.

Action by J. M. Flinn against the Alabama Great Southern R. R. Company for damages for injuries suffered while in its employment. Judgment for plaintiff and defendant appeals. Affirmed.

A. G. & E. D. SMITH for appellant. SMITH & WILKINSON and HARSH & FITTS for appellee.

MAYFIELD, J.— (1) Appellee, a mechanic employed by appellant in its machine shops, sues appellant to recover damages for personal injuries, the loss of an eye, and other damages. The trial was had on two counts, one drawn under the second subdivision, and the other under the third subdivision, of the Employers' Liability Act (Code 1907, § 3910). The two allegations of negligence are, respectively, as follows: "Cliff Adams, who on behalf of defendant had superintendence intrusted to him by defendant, negligently whilst in the exercise of such superintendence negligently caused or allowed said object to be thrown or propelled upon or against plaintiff on the occasion aforesaid, and as a proximate consequence of said negligence plaintiff suffered said injuries and damage."

"Cliff Adams, who was in the service or employment of defendant and to whose orders or directions plaintiff was bound to conform, negligently ordered or directed plaintiff to plane or cut metal, to-wit, said truck bolster on or by means of said planer, and plaintiff did conform to said order and direction of said Adams, and as a proximate consequence of so conforming to said negligent order plaintiff suffered said injuries and damage."

The sufficiency of the last count was challenged by demurrer, but the count was held sufficient, and that ruling is here insisted upon as error to reverse. In the opinion of the writer this count is wholly insufficient; but the later rulings of this court have established a rule as to sufficiency of counts like the one in question, which authorizes the ruling of the trial court. The views of the writer on this subject were set out at some length in the case of *Louisville & Nashville Railroad Co. v. Barganier*, 168 Ala. 567, 53 South. 138. In that case the whole and sole allegation as to negligence on the part of the servant giving the order was that one Kirby, who gave the order, "negligently" ordered plaintiff to come where he, the said Kirby, was upon an engine. The majority held the allegation sufficient as to negligence. In the case of *Republic Iron & Steel Co. v. Williams*, 168 Ala. 617, 53 South. 76, the allegation as to negligence in the giving of the order was: "Negligently ordered or directed plaintiff to go into said furnace without properly and sufficiently warning or informing plaintiff as to said gas or liquid."

The majority of the court held the allegation sufficient to show negligence in the giving of the order. The majority held the allegation sufficient, without the averment of failure to warn of the existence of the dangerous gas or liquid in the furnace; that is, that the allegation that the superior servant ordered the interior "to go into a furnace" was sufficient to charge actionable negligence against the master. The majority had, before those two cases, held, and have since held, similar allegations sufficient. While the writer is yet of the opinion that these rulings are wrong, and that they destroy all the efficacy of pleadings in such cases, yet it is a matter or question of practice, and no good can come of the writers' further dissenting, and hence he yields to the inevitable.

(2) Plea 8 was interposed as a defense to each count, and a demurrer thereto was sustained, and of this ruling the defendant next complains. The plea was as follows:

"That plaintiff was guilty of negligence which proximately contributed to his own injury in this: That he knew, or in the exercise of due care ought to have known, that it was dangerous to do the kind of work in which he was engaged when injured on the planer, and that the same was a danger obvious to him, yet nevertheless plaintiff did said work on said planer, and in consequence thereof was injured."

[Alabama G. S. R. R. Co. v. Flinn.]

(3) This plea will be seen to contain alternative averments. It must therefore be tested by its weakest averment, viz., that plaintiff "ought to have known that it was dangerous" to do the work ordered to be done by him, and that he ought to have known it was an obvious danger.

(4) It may be true that the plea is susceptible of the construction that the phrase, "ought to have known," refers only to the dangerous character of the work ordered to be done, and not to the allegation that it was obviously dangerous to do the work ordered to be done; but it is also susceptible of the construction that the quoted phrase applies to both, and it must be construed against the pleader. So construing it, the plea was bad, and subject to the demurrer.

(5-7) The law as to the question sought to be raised by the plea, in the different phases in which it is usually presented, was well stated in the case of *Woodward Iron Co. v. Wade*, 192 Ala. 651, 68 South. 1008. It is there said:

"It must have been reasonably apparent to the master, or his vice principal who gave the order, under the conditions as he knew or ought to have known them, that the servant's execution of his command would expose the servant to some peril, beyond the ordinary risks of his service, and against which ordinary and reasonable care on his part would probably not suffice to protect him.—See 1 Labatt on M. & S., § 347.

"(2) If this peril was obvious to the servant, and might readily be avoided by him while fully discharging his duty of service in conformity with the order given him, the master had the right to assume that the servant would both observe the peril and avoid it; and the order was not negligently given.— *Davis v. Western Ry. of Ala.*, 107 Ala. 626, 633, 18 South. 173.

"(3) If, on the other hand, the peril was not obvious, but was inherent in the conditions necessarily surrounding the servant while executing the master's order (conditions which the master could and should have known, and of which, if not remedied, the servant could expect the master to seasonably inform him), the master's order, without such warning, was negligent and actionable.—1 Labatt on M. & S. 437."

(8-10) Here it was not clearly and certainly alleged by the plea that the peril or danger involved in obeying the order was obvious to the plaintiff; it was only alleged (construing the plea against the defendant), that the plaintiff, by the exercise of rea-

sonable care, ought to have known that the danger or peril of so obeying the order was obvious. Moreover, the danger or peril, if any existed, which made it actionable negligence to give the order in this case as alleged, and to which allegation the plea was intended to be an answer, must have been "inherent in the conditions necessarily surrounding the servant while executing the master's order." The mere fact that a servant knows, much less that he ought to know, that the work he is doing or is ordered to do is dangerous, or is attended with danger, standing alone, does not make the servant guilty of contributory negligence such as to bar his recovery on account of actionable negligence of the master or of one of his servants, even in giving the order to do the particular work. The danger and peril of doing the work or thing must be obvious, and one which an ordinarily prudent servant would not undertake to risk, even if ordered so to do by the master or by a servant for whose orders the statute makes the master liable. Mr. Labatt thus states the rule: "Upon general principles it is manifest that, although the servant may have been directly commanded or urged to undertake the work from which the injury resulted, he cannot claim an indemnity where the danger to be encountered was at once so obvious and so serious that no prudent man would have incurred it. That is to say, the order must, if it is to serve as a justification, be a matter with regard to which the servant has a right to rely on the superior judgment of the master.

"The courts decline to lay down a rule of law purporting to define accurately how dangerous a proposed action would have to be before a servant receiving an order from his master to perform it would be required to disobey under pain of being chargeable with negligence. But where there is no dispute as to the facts, and the dangers of obedience to an order are as apparent to the servant as to the employer's representative, there is no occasion to go to the jury to determine whether the servant should have obeyed the order."—Master & Servant, vol. 1 (1st Ed.) § 442, p. 1254.

" 'The servant does not stand on the same footing with his master. His primary duty is obedience, and if, when in the discharge of that duty, he is damaged through the neglect of the master, it is but meet that he should be recompensed.' This essential inequality in the positions of the parties is deemed to warrant the deduction that 'a prudent man has a right, within

reasonable limits, to rely upon the ability and skill of the agent in whose charge the common master has placed him, and is not bound, at his peril, to set his own judgment above that of his superior.' "—Id., § 440, p. 1242.

This plea, of course, involves the doctrine of volenti non fit injura, as applied to the Employers' Liability Act.

The decisions of this court have not been uniform on the subject, but have oscillated considerably, sometimes going to the extent of overruling themselves repeatedly. The subject was first raised and decided in the case of *Eureka Co. v. Bass,* 81 Ala. 200, 8 South. 216, 60 Am. Rep. 152; that decision was overruled by *Holborn's Case,* 84 Ala. 133, 4 South. 146; and the later decision was modified, if not qualified, in *Walters' Case,* 91 Ala. 435, 8 South. 357; and the last two cases overruled and the doctrine announced in *Eureka v. Bass,* 81 Ala. 200, 8 South. 216, 60 Am. Rep. 152, in effect if not in toto, reestablished.

The three last cases were reviewed and explained, and the doctrine of the Massachusetts and the English cases was adopted and followed, in *Osborne's Case,* 135 Ala. 571, 33 South. 687, where it was said: "The employer cannot treat as a breach of duty, but is held to sanction, that which by contract of employment he has required the employee to do.—*Snow v. Housatonic, etc., R. Co.,* 8 Allen (Mass.) 441 [85 Am. Dec. 740]. In Bailey's Per. Inj. § 1116, it is said: 'The mere fact that the employee knew that the work was manifestly dangerous of itself does not constitute the contributory negligence. If it is shown that he used that which was dangerous in a negligent manner, this would be contributory negligence. The same principle is announced in *Mobile & B. R. Co. v. Holborn,* 84 Ala. 133 [4 South. 146], and in *Highland Ave., etc., R. Co. v. Walters.* A person who continues in an employment with full knowledge of the risk run, and who voluntarily goes to do that which he knows will expose him to danger, cannot recover for injuries so received.' Such is the law as stated in the leading cases of *Thomas v. Quartermain,* 17 Q. B. D. 414, and as recognized by this court.—*Birmingham R., etc., Co. v. Allen,* 99 Ala. 359 [13 South. 8, 20 L. R. A. 457] ; *Bridges v. Tenn., etc., Co.,* 109 Ala. 287 [19 South. 495] ; *Southern Ry. Co. v. Guyton,* 122 Ala. 238 [25 South. 34]. The decisions in *Mobile, etc., R. Co. v. Holborn* and *Highland Ave., etc., Co. v. Walters, supra,* though correct on the point to which we have cited them, have been in effect overruled so far as they held that the Employers'

Liability Act operated as between employer and employee to abrogate the doctrine of volenti non fit injuria. That doctrine is founded on the consent express or implied of the employee to take the chances of injury or escape from a threatening situation, but such consent is not implied unless the danger is obvious or is known to the employee."

There has been no intentional departure from the doctrine announced in this last case by this court, and we now reaffirm it.

Therefore, testing the plea by these rules, and the other rules, that alternative averments are no stronger than the weakest alternative, and that all averments or allegations which are susceptible of two or more constructions must be construed against the party or pleader so averring or alleging, the plea was subject to the demurrer interposed.

(11) There was no error in the court's declining to compel the plaintiff to give his opinion or conclusion as to whether or not it was dangerous to work under the conditions existing when the injury occurred; nor in declining to compel plaintiff to answer the question, propounded on cross-examination, whether or not the danger was obvious to plaintiff; nor in declining to compel him to state whether or not he was discharged by the defendant on account of a fight he had with a Mr. Griffin.

(12) A witness, as a rule, should not be allowed to state his conclusions. Held, that a witness could not state that a street was in a dangerous or impassable condition.—*Anniston v. Ivey,* 151 Ala. 392, 44 South. 48; 6 Mayf. Dig. 346.

A witness should not be allowed to testify that the plaintiff had knowledge of the defective condition of a trestle by which he was injured.—*West Pratt Coal Co. v. Andrews,* 150 Ala. 368, 43 South. 348; 6 Mayf. Dig. 348.

A witness should not be allowed to reason to the jury; he must speak to and of facts; intentions, motives, or beliefs are to be inferred from facts, and the jury must deduce the conclusions unaided by the opinion, reasoning, or inference of witnesses; witnesses must testify, not argue; and expert witnesses are not an exception to this rule.—*Richardson v. State,* 145 Ala. 46, 41 South. 82, 8 Ann. Cas. 108; *Mobile Co. v. Little,* 108 Ala. 399, 19 South. 443; 6 Mayf. Dig. 348.

Evidence consisting of conclusions and inferences of witnesses is usually inadmissible; e. g., opinion as to whom defend-

ant's agent thought he was dealing with.—*Manchester Fire Ins. Co. v. Feibelman,* 118 Ala. 308, 23 South. 759. As to why a party did or did not do an act.—*Lytle & Co. v. Bank of Dothan,* 121 Ala. 215, 26 South. 6. As to why a party knew a fact.—*Alabama G. S. R. Co. v. Burgess,* 114 Ala. 587, 22 South. 169. Whether a party would have acted differently.—*Reeder v. Huffman,* 148 Ala. 472, 41 South. 177. Nor can a witness give his reason or motive for doing an act.—*Southern Ry. Co. v. Shelton,* 136 Ala. 191, 34 South. 194; 6 Mayf. Dig. 349.

(13) There was no error in sustaining objections to the defendant's questions propounded to the witness Franks, which called for his opinion or conclusion as to whether given acts or words would constitute negligence. The facts and circumstances should have been stated to the jury, letting them draw the conclusion as to negligence. The whole right of action depended upon the fact of negligence as to the particular subject inquired of by the questions. The questions, therefore, sought to have the witness discharge a part of the functions of the jury.

(14) These questions called for answers entirely different from those sought by the questions propounded by plaintiff to this witness, as to whether or not it was the duty of foremen to warn employees as to the probability of their being injured. These were facts to which the witness could testify, as a witness, without invading the province of the jury.

It is insisted by appellant that the duty to warn was not made an issuable fact, and that it was therefore immaterial and irrelevant. In the opinion of the writer, this contention is well founded and is correct; but the repeated ruling of the majority is to the contrary. That is, that the allegation that plaintiff was negligently ordered to do the work is sufficient without alleging any facts that show a duty, or the breach of a duty, not to order the plaintiff to do the work, and that it opens up the whole field and allows plaintiff to show any facts which tend to establish a duty owed to the plaintiff, and a breach thereof by ordering him to do the work or act commanded to be done. If the servant who gave the order to plaintiff to plane the iron knew, or by the exercise of proper diligence ought to have known, that it was dangerous or perilous for plaintiff to obey the order, it would be a breach of his duty owing the plaintiff to so order him; but, unless he knew, or ought to have known, of the danger or peril, then of course there was no breach of a duty in giving the order, and the

[Alabama G. S. R. R. Co. v. Flinn.]

servant giving the order would not be guilty of negligence in this respect.

(15) It has been ruled in the cases heretofore cited that it is not necessary to aver any particular facts or circumstances to show that it was actionable negligence to give the order complained of, that it is sufficient to show what the order was, and to allege generally that it was "negligently" given, of course following the language of the statute to the effect that the plaintiff was bound to conform to the order, and that he did conform thereto, and was injured as the proximate result of so conforming, and that under this general allegation any actionable negligence may be shown on the part of the servant who gave the order. This, of course, places the defendant at a great disadvantage, but the law and the rules of pleading are so written. The defendant is not allowed to plead contributory negligence in such general form, but he is required to plead it specially, and can prove none except what he so pleads, and if he does prove it he can get no advantage from so proving it. He cannot, of course, plead specially to any particular act of negligence charged, because no such negligence is alleged; he is not informed of any particular facts or circumstances which show, or tend to show, that the servant who gave the order was negligent. The defendant is left to surmise and doubt; he may guess at the facts which the plaintiff will seek to prove in order to show actionable negligence in giving the order, and may thus anticipate and file a special plea; but the plaintiff may surprise him, and prove altogether different facts, as to which his special plea is no answer, or is not apt; but as to which matter a different plea might have been a perfect answer, and could have been easily proven, if it had been pleaded.

However difficult it may be to understand the reason or justice of a rule of pleading and evidence which allows one party to allege generally, and prove anything which he could prove if alleged specially, and yet denies this right to the other party, requiring him to allege both specifically and specially and allowing him to prove only such matter as he has specifically and specially alleged, nevertheless such is the law, and such are the well-settled rules in this court, in negligence cases.

(16) Where the particular facts constituting the cause of action, or the defense, lie peculiarly within the knowledge of one party and not within that of the other, the justice of the rule

requiring the party having the knowledge to primarily allege and prove such facts is readily recognized; but when such facts are equally within the knowledge or the reach of both parties, or are peculiarly within the knowledge of the party not required to allege, the reason or justice of the rule is not so perceptible; but, nevertheless, the rule exists in this state, and in the opinion of the writer cries loudly for a change.

(17) There was no error in declining to allow the defendant to prove by the witness Stotzky what the witness would have done or would not have done had he been in the position plaintiff was in when the injury occurred. Two of the questions disallowed to the defendant were as follows: (a) "I will ask you, in view of the fact that you have been a machinist for a long time, whether or not if you had been told to take that lug off the bolster you would have used, or would have been as apt to use, the planer as the slotter?"

(b) "I will put it in this shape: Suppose a foreman had told you to take off those lugs from the bolster, I will ask you whether or not you would have put it on the planer to have taken them off."

The uncommunicated motive or purpose of a witness with respect to certain acts of his about which he has testified are not admissible in evidence. He should not be asked, nor should he be allowed to state, what he would have done or said under certain conditions.—*Reeder v. Huffman,* 148 Ala. 472, 41 South. 177; 6 Mayf. Dig. 350.

(18, 19) There was no error in that part of the oral charge to which exception was reserved, in which the court charged the jury that the law furnished no measured or standard to determine the exact amount of damages recoverable in actions like this, but that the measure thereof was left to the sound discretion of the jury to determine from all the evidence. This was certainly true, so far as damages for mental and physical pain were concerned; and, if it had any misleading tendencies as to other elements of damages, it was corrected or cured thereof by other parts of the oral charge of which this was but a part, or it should have been corrected by requested charges. We do not think this part of the charge was error to reverse.

(20) That part of the oral charge as to damages for permanent injury to which exception was taken, is also insisted upon as error to reverse. After having instructed touching damages as

for physical pain, loss of time, doctors' bills, and other expenses, that part of the charge concludes as follows: "In addition, gentlemen, if you are reasonably satisfied from the evidence in this case that the plaintiff was permanently injured, this is the end of this lawsuit, and you may award him such sum as would reasonably compensate him for his permanent injuries."

It is insisted by counsel for appellant that that part of the oral charge was error to reverse, for the reason and upon the authorities relied upon to show error in the part of the oral charge to which an exception was reserved, and to which we have responded. The argument of appellant's counsel is based on *Seaboard Manufacturing Co. v. Woodson*, 98 Ala. 378, 11 South. 733, and the cases thereafter following it. In that case a charge was held bad which left to the discretion of the jury the amount of damages which the plaintiff might recover, as for the impairment of his ability to earn money. In that case it was said: "Whether an employee's wages will be increased or diminished, in the future, or whether he will certainly die sooner or later, is not a fact of positive proof, but no sound rule of right and justice will permit a jury, in assessing damages to be paid by one person to another as compensation for a pecuniary loss, to reach a conclusion of the amount to be paid from mere conjectures, or without regard to proper data furnished as evidence. The law fixes the burden upon him who claims damages from another as a compensation for a pecuniary loss to furnish the facts necessary to ascertain the extent of his loss with reasonable certainty, and failing in this, he is entitled to no more than nominal damages. It is upon this principle that it is permissible and proper to introduce evidence of the age of the person, mortuary tables to show the probable duration of life, the business habits, industry, and sobriety, earnings, skill, and whatever facts may conduce with reasonable satisfaction to aid the jury in arriving at what would amount to a just and fair compensation for the damage or loss sustained.—*L. & N. R. R. Co. v. Orr*, 91 Ala. 548 [8 South. 360]."

The above case was cited with approval by the Court of Appeals in *Alabama Northern Railroad Co. v. Methvin*, 9 Ala. App. 519, 64 South. 175, and it was there said: "While the law can fix no standards for measuring physical and mental pain, which, of necessity, must be left to the sound judgment of the jury after taking into consideration and weighing the evidence as

to the extent of it, yet damages for loss of time from work and for decreased earning capacity resulting from permanent injury are to be measured by certain data which the plaintiff should furnish the jury to that end. We are therefore of opinion that the court erred in the charge quoted, which gave the jury too wide a latitude in the assessment of the damages.—*Seaboard Mfg. Co. v. Woodson*, 98 Ala. 378, 11 South. 733."

In *Manistee Mill Co. v. Hobdy*, 165 Ala. 411, 51 South. 871, 138 Am. St. Rep. 73, it is said: "The court, in its oral charge, after instructing the jury that, if they found for the plaintiff, they should give him, as part of his damages, his reasonable expenses, compensation for loss of time, reasonable compensation for mental and physical suffering, and also for the permanent injury, and, after speaking of his probable expectancy, said: 'You may give the plaintiff the amount of his earnings during such expectancy, as a part of his damages.' In the present case the plaintiff testified that he was incapacitated to do sawmill work—that is, 'the physical part of it'—but, as it is evident that he is still capable of doing something for a livelihood, the burden was on the plaintiff to show the difference between his earning capacity before, and that since, the injury."

In *Sloss-Sheffield Steel & Iron Co. v. Stewart*, 172 Ala. 516, 525, 55 South. 785, 788, it is said: "It may be that, when a party claims damages for the loss of earning capacity, he must furnish some data as to his earning capacity before and after the injury, and not leave it a pure matter of speculation for the jury.—*Manistee Mill Co. v. Hobdy*, 165 Ala. 417, 51 South. 871 [138 Am. St. Rep. 73]; *Birmingham R. R. v. Harden*, 156 Ala. 250, 47 South. 327; *Seaboard Co. v. Woodson*, 98 Ala. 382, 11 South. 733; *Helton v. Ala. Midland R. R.*, 97 Ala. 275, 12 South. 276. Failing to do this, he is entitled to no more than nominal damages."

In *Binion's Case*, 107 Ala. 645, 18 South. 75, it was held that charges as follows were properly refused to defendant: "(8) The plaintiff must show that his capacity for making a living has been diminished, and must furnish the evidence on which the jury are to calculate the amount of compensation to be allowed him.

"(9) If the evidence shows that the capacity of plaintiff for earning a support has not been diminished by the injuries sustained, then the jury can only award nominal damages."

The court, in dealing with these charges said: "The eighth and ninth were properly refused. The loss of plaintiff's arm in the accident, his loss of time and his pain and suffering, were data upon which the jury might base their verdict, and the giving of these charges would have tended to impress the jury that such was not the fact.—*Mobile & Ohio R. Co. v. George,* 94 Ala. 222 [10 South. 145]."

In *George's Case,* 94 Ala. 199, 10 South. 145, discussing charges as to damages when the injury is permanent, the court said: "Where the injury is permanent, the plaintiff, in actions of this character, may recover compensation for the disabling effects of the injury past and prospective. In estimating the damages, the loss of time, and the incapacity to do as profitable labor as before the injury, as well as the mental and physical suffering caused by it, are pertinent and legitimate factors.— *S. & N. R. R. Co. v. McLendon,* 63 Ala. 266; *Ala. Gt. So. R. R. Co. v. Yarbrough,* 83 Ala. 241 [3 South. 447, 3 Am. St. Rep. 715]."

(21) It appears from the decisions cited that when the injury is shown to be permanent, and to have been proximately caused by the negligence alleged, there may be several factors entering into the verdict determining or fixing the amount of damages. Some of these factors are: Pain and suffering, past and future, impaired health, diminished earning or working capacity, mutilation or disfigurement, and expenses of nursing and care; and there may be incurred many other detrimental effects, and expenses, as the natural and proximate result of the injury.

It was said by this court in *Hill's Case,* 93 Ala. 514, 9 South. 722, 30 Am. St. Rep. 65 (and quoted by Mr. Sutherland in his work on Damages), that: "It is to be assumed that every physical endowment, function, and capacity is of importance in the life of every man and women, and that occasion will arise for the exercise of each and all of them. And to the extent to which any function is destroyed, or its discharge rendered painful or perilous by the wrongful infliction of personal injury, is the party complaining entitled to damages. We can, in other words, conceive of no physical injury, wrongfully inflicted, whether entailing pain only, or disfigurement, or incapacity, relative or absolute, to perform any of the functions of life, which may not be made the predicate for compensation in damages."

(22) It thus appears that some of these factors or elements of damages, where permanent injuries are shown, are susceptible of exact admeasurement and proof, while others are not.  As to those which are susceptible, of course the plaintiff must furnish data in the way of evidence or proof from which the jury may ascertain and fix the amount which is recoverable as for such elements; and, if no data or proof is furnished, then only nominal damages as for such elements are recoverable.

(23) As to those factors and elements of damages, from permanent injury, not susceptible of exact measurement or proof —such as pain and suffering past and future, mutilation, disfigurement of body or person, loss of an organ (in this case, an eye), their ascertainment and assessment are matters in a large degree, and of necessity, left to the discretion and enlightment of the jury.  But the finding of the jury is, of course, subject to the control of the court after rendition, as by setting the verdict aside because either so excessive or so inadequate as to show that the jury were influenced by bias, favor, prejudice, or other improper motive or inducement.

This part of the oral charge was dealing with damages as for permanent injuries, which may or may not include loss of earning capacity in the future, aside from loss of time.  The injury might be permanent, and yet not involve any loss of future earning capacity.  Hence damages for permanent injuries might not include such, because there might be none.  The charge might tend to mislead the jury, as authorizing them to find damages as for loss of earning capacity, when there was no evidence to support such damages; but if such tendency the charge had, it could and should have been cured by requested charges.

(24) Certainly a permanent injury such as the loss of an eye well entitles the injured party to recover some damages of the defendant if the defendant be liable therefor, although there be no data which will authorize any given or fixed damages, some of the elements of which, as we have shown, are incapable of exact admeasurement.

(25) Defendant requested some written charges which were refused, but probably none of these were intended to correct the misleading tendencies of the oral charge in the respect above pointed out.  If there were any such, they were properly refused because erroneous, or because they themselves possessed misleading tendencies.

(26) Charges 13 and 14 may have been intended to cure the misleading tendencies of the given charges; but they were erroneous in that they each sought to prevent a recovery of damages as for any loss of any kind in the future, because there was no evidence to support such damages. This might be true as to earning capacity in the future, but not as to pain or suffering, nor as for the loss of an eye. As is shown by the authorities before cited, such damages are not susceptible of certain or exact admeasurement, as are those for loss of time, for expenses, and for the amount that would probably be earned in the future but for the injury.

We are not prepared to say that there was any error in denying defendant's motion for a new trial.

We have considered all the errors assigned and argued, though they are not separately treated in the opinion.

Finding no reversible error, we conclude, that the judgment appealed from must be affirmed.

Affirmed.   All the Justices concur.