(77 South. 331)

SMITH et al. v. WALDROP et al.
(6 Div. 616.)

(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied Dec. 24, 1917.)

1. CUSTOMS AND USAGES ⬥19(2)—EVIDENCE ⬥142(5)—ATTORNEY FEES—SIMILAR FACTS.

In determining the proper division of fees between attorneys and associate counsel employed by them, evidence of a custom among members of the city's bar where an attorney engaged an associate, as had been done, to divide the fees equally, and evidence of other employments between the parties in other similar cases, wherein the fees were equally divided, was admissible.

2. ATTORNEY AND CLIENT ⬥151—COMPENSATION—EMPLOYMENT OF OTHER FIRM—RIGHT TO FUND IN COURT.

The principle that associate counsel having no contractual relation with the client can have no claim to any part of the fund recovered, but must look for compensation to the attorney employing him as an associate, has no application

to a bill of interpleader to determine rights to fees left by the client with the clerk of court, in which case the fund will be awarded according to the agreement for division between the attorneys.

3. ATTORNEY AND CLIENT ⬥151—EMPLOYMENT OF ONE FIRM BY OTHER—RIGHT TO COMPENSATION.

Where attorneys employed by another firm as associate counsel were to have a half of whatever amount was recovered in fees if the case went to the Supreme Court, and the case went to such court, the associates are entitled to their half, unless they abandoned the contract, or declined, refused, or failed without excuse to perform.

Appeal from Circuit Court, Jefferson County; H. A. Sharpe, Judge.

Interpleader between J. Q. Smith and others and William J. Waldrop and others. From a judgment for Waldrop and others, Smith and others appeal. Affirmed.

Carmichael & Wynn and Smith & Wilkinson, all of Birmingham, for appellants. Harsh, Harsh & Harsh, of Birmingham, for appellees.

MAYFIELD, J. This is a bill of interpleader. The fund is in the hands of the clerk of the court; and it is not disputed that it belongs to some or all of the interpleaders. Appellants claim that the whole belongs to them, while appellees claim that one-half belongs to appellees and the other half to appellants. The trial court decided in favor of appellees, and appellants appeal.

The undisputed facts are that the fund is one-half of a judgment recovered in the case of Alabama Great Southern Railroad Company v. Flinn, 74 South. 246;[1] that Flinn has received his half, and that the other half was left with the clerk, and that this is a proceeding to determine the respective rights of appellants and appellees thereto; that the client, Flinn, employed the senior member of the appellant firm, agreeing to pay him one-half the amount of the recovery, or a sum equal thereto, and that the attorney so employed associated with himself the senior member of the appellee firm of attorneys, agreeing that if the case went to the Supreme Court the fees should be divided equally between the two firms. There appears to have been no agreement between the two firms as to how much, or what particular part, of the work in the trial of the case in either court should be performed by the respective attorneys or firms.

Conferences and consultations were had between the attorneys of the respective firms, relative to the trials and the appeals. The original complaint was drafted by the senior member of the appellant firm; and in the conferences about the pleadings in the case the complaint was revised by the senior member of appellee firm. There arose some difference as to the extent of this revision—whether it went to the whole complaint, or

merely to the counts additional to the original complaint.

The trial in the lower court was actually conducted by the appellant firm; the senior member of appellee firm being then engaged in the trial of another case. There is some difference in the testimony as to what assistance, if any, in the selection of the jury and possibly in other matters, was rendered by the latter. But there is no proof that appellee ever declined or refused to assist in the trial, in either the trial court or the appellate court. Appellee, however, did decline to attempt to aid in settling the bill of exceptions on appeal, because he was not present at the trial and, of course, could not know what was proper, and what was improper, in such bill. Appellee did aid in the preparation of a brief on appeal of the case to this court, wherein the judgment of the trial court was affirmed. There is some difference between counsel as to the extent of this phase of the aid, and as to whether or not the senior member of appellee firm was present in this court when the case was submitted.

There was evidence of a custom among members of the Birmingham bar, where one firm associated with itself another firm, as was done in this case, to divide the fees received equally between the firms; and there was evidence of other employments of the appellee firm, by the appellant firm, in other similar cases, wherein the fees were equally divided.

[1] Appellants objected to this evidence and excepted to its admission; but we see no error in its admission. We are of the opinion, in the light of the evidence shown by this record, that the trial court ruled correctly. It is shown without dispute that it was agreed that if the case went to the Supreme Court on appeal the appellees were to have one-half of the fees paid by the client. There was no agreement as to the extent, or the particular character, of the services which appellees were to render. There is no evidence to show that the senior member of appellee firm ever refused to assist in, or ever withdrew from the case, or that appellants ever treated him as having withdrawn from the case. It is very true that the record shows that much the greater part of the actual work was done by appellants; yet there is no doubt that assistance was rendered by appellee in the trial court and on the appeal to this court, and we have no bases, nor did the trial court have any, other than the actual agreement, upon the contingency of the case's going to the appellate court, for apportioning the fund between the two firms—which agreement, it appears, was in accordance with the custom in such cases among the members of the Birmingham bar, and even among the members of the two firms in question. And this latter fact certainly tends to show that each firm was aware of the custom, and practiced in observance of it.

[2] It is insisted by appellants that as appellees never had any contractual relation with the client, Flinn, they can have no claim to any part of this fund, but must look to appellants exclusively for compensation for their services. If the client ever had any interest, claim, or title to the fund, and this was an attempt to fasten and enforce an attorney's lien upon the fund, this contention would be sound, and might deny appellees any right thereto, though we do not so decide, because a decision is not necessary. This principle, however, has no application; it is agreed that the client has no interest in, or claim to, the fund; that it was left in court as belonging to the attorneys, and for the purpose of settling the rights of appellants and appellees thereto by this interpleader or other appropriate action.

[3] As it appears without dispute that appellees were to have one-half of whatever amount appellants recovered in fees if the csae went to the Supreme Court, and the case did come to this court, and the fund in contest is the fees received by the appellants, the appellees are entitled to their half, unless they abandoned the contract or declined or refused, or without excuse failed, to perform their part thereof. As before stated, there was no agreement as to what particular part of the services, or what particular portion thereof, appellees were to do; and as there was never any withdrawal from the case or refusal to assist, and as appellees were treated by appellants as being associated in the case—they having actually assisted in the preparation of the brief on appeal to this court, and their names being signed thereto by appellants—it is conclusive that they were all the while considered as being associated with appellants in the case and entitled to compensation for their services; and the only datum before the trial court or this court for fixing the amount is the agreement between the parties, in connection with the evidence of the custom and the course of dealing between the very parties to this suit, in other similar cases. A part of the testimony of the senior counsel of appellant firm, which we find leads to this conclusion, is as follows:

"After the railroad company declined to make any adjustment of the case I saw Mr. Harsh one day and told him I had a case of Mr. Flinn against the Alabama Great Southern Railroad Company. I told him that the company had declined to settle the case, and that I considered it a very close case on the facts, and I would like to have the benefit of his services on the trial of the case, and if it was fought through the Supreme Court, as I presumed it would be, if we recovered anything I wanted him to help to fight it through the Supreme Court. Mr. Harsh said he would give me the best he had in him, and I told him if I could get that I would be perfectly satisfied, because I felt there was not anything better in Birmingham. There was some discussion as to my fee, and I told him I had 50 per cent. of whatever I recovered in the case. Mr. Flinn was to pay me a sum equal to

half of what I recovered in the case. I told him if he would help me fight the case and if it went to the Supreme Court I would be glad to divide my fee with him."

As to the fund's being left with the clerk for the purpose of determining the rights of the parties thereto, the following excerpt from the record shows it to be availing in this interpleader suit:

"Examined by Mr. Harsh: Q. Mr. Wilkinson, with respect to the agreement between yourself and myself, that yourself and your firm and myself and my firm at the time Mr. Flinn got his money, wasn't it, in fact, agreed that Flinn should take half of the whole amount, as his part of it, and leave the balance in the clerk's hands, as attorneys' fees, and Mr. Waldrop agreed to hold it as such, to be settled between the rights of the parties? A. Mr. Flinn was to take half of it and the balance was to be held by Mr. Waldrop; he was to hold the balance of it. Q. And it was agreed that the balance of it was to be held as attorneys' fees? A. Yes, sir. Q. Have you got that file, or got it at the office? A. No, sir; the only file I have is the transcript, and your brief and Captain Ad. Smith's brief. Q. Harsh and Fitts were attorneys of record with Smith and Wilkinson, all through the trial of the case, were they not? A. Yes, sir. Q. And both names were signed to the brief? A. My recollection is that I signed the brief, Horace C. Wilkinson and Harsh & Fitts."

With these undisputed facts in the record, we hold that the trial court ruled correctly, and rendered the only judgment which properly could have been rendered. There is shown no data by which this court or the trial court could otherwise apportion the fund so left for this purpose.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.