183 So. 653

**SOVEREIGN CAMP, W. O. W., v. FISCHER.**

**7 Div. 522.**

Supreme Court of Alabama.

Oct. 6, 1938.

E. M. Baker, of Fort Payne, for appellant.

Isbell & Beck and Scott & Dawson, all of Fort Payne, for appellee.

GARDNER, Justice.

Suit upon a benefit certificate issued by defendant fraternal organization upon the life of Erby J. Fischer, with plaintiff, his wife, named as beneficiary. The certificate was issued June 19, 1935, and delivered July 3, 1935, to insured who died April 2, 1936, after an illness of eleven days.

The defense is ·based upon the alleged false warranty of the insured that he was in sound health at the time of the application and delivery of the certificate, and as to his previous illness and treatment by a physician. Sovereign Camp, W. O. W., v. Hutchinson, 214 Ala. 540, 108 So. 520; Brotherhood of Ry. & S. S. Clerks, etc., v. Riggins, 214 Ala. 79, 107 So. 44; Sovereign Camp, W. O. W., v. Sirten, 234 Ala. 421, 175 So. 539.

The cause of death was a perforated ulcer of the stomach. It appears that in June, 1931, insured was treated for an ulcerous condition of the stomach by his regular local physician, Dr. Clayton, who, it seems, still lives. Dr. Clayton, however, sent him to Dr. Harris of Birmingham for further examination and diagnosis; and Dr. Clayton's diagnosis was confirmed. Insured had been suffering from pains in the stomach and "heart burn," relieved at times by soda and vomiting. The ultimate diagnosis was ulcer of the duodenum, first part of the small intestine, just outside the stomach. The ulcer, says Dr. Harris, may have extended into the stomach. There was no operation but certain treat- ·ment prescribed.

Plaintiff's evidence tends to show the treatment was successful, and the recovery of the insured. The testimony of the doctors disclose that patients do recover from such ulcers under proper care, and ample evidence was offered by the plaintiff that insured had so recovered, and continued his work with regularity the remaining years. And the testimony of the physician treating insured in his last illness showed that the perforated ulcer was in the main section, near the center of the stomach.

Dr. Harris testified that if the cause of insured's death was diagnosed as perforated ulcer, he could not say positively that the ulcer he diagnosed and discovered in 1931 caused the death "as it may have gotten well and come back, or another ulcer occurred or a recurrence." And that he could not say the "ulcer he discovered in 1931 extended up to the time of his death."

But we need enter into no detail discussion of the proof, but content ourselves with the statement of our conclusion that whether or not insured was in sound health at the time of his application and the delivery of the policy was a question properly left to the jury's determination.

Defendant further insists that insured's answer to the inquiry in his application as to any previous illness was false, and that it was due the affirmative charge by reason of the uncontroverted proof in this regard establishing its pleas to that effect, ·particularly pleas 5 and 6. The questions and answers relating to these pleas are found in the application, and are as follows:

"Have you within the past five years suffered any mental or bodily disease or infirmity?

"Yes. If so, stated which, when and duration. In 1931 was treated for stomach trouble. Don't remember time.

"Have you within the past five years consulted or been attended by a physician for any disease or injury or undergone any surgical operation?

"Yes. If so, for what? Give date, duration of same, and name and address of physician. For stomach trouble—1931—Dr. B. M. Clayton."

Referring to this particular matter of previous illness, the application states: "I hereby warrant that I have not been sick, except as herein stated." Defendant insists the foregoing answers are false for failure of insured to specify the exact nature of his illness, that is, that he had the character of ulcer of the stomach the diagnosis of the doctor disclosed, and that he failed to name Dr. Harris as one of the physicians.

We are persuaded the following excerpt from 32 Corpus Juris 1295, is here applicable: "When their (warranties, we interpolate) truthfulness depends upon the construction of a question which is subject to two different interpretations, the material inquiry is as to whether insured truthfully responded to the question as he understood it."

Here the question was propounded to a layman who merely made application to the local lodge, and was asked concerning any bodily disease. Is he supposed to state his previous illness in his own words, or is he expected to give a technically correct reply as to the exact nature of the illness? He knew his illness as a stomach trouble, and indeed so it was. He states he had suffered from stomach trouble and been treated therefor. He then gives the name of his physician, Dr. Clayton. All of this sufficed for a full inquiry on defendant's part where all details were available. Nothing was concealed. The question did not indicate to the applicant that he must go into further detail, and state that in company with Dr. Clayton, he had been to see Dr. Harris, who likewise examined him and confirmed Dr. Clayton's diagnosis. Dr. Clayton was his family physician. He it was who had charge of his case. The inquiry was not in the plural as to physicians, but a physician only.

We think the jury might well infer that insured truthfully answered these questions as he understood them (Phoenix Mutual Life Ins. Co. v. Raddin, 120 U.S. 183, 7 S.Ct. 500, 30 L.Ed. 644), and that the affirmative charge was not due defendant on the pleas setting up this defense.

Like argument is applicable to the pleas as to change of occupation, based on the negative answer to the inquiry: "Has any change of climate or occupation ever been made or advised for the benefit of your health?" Following his illness in 1931, insured merely changed from outdoor work to indoor work with the mail; that is, he changed from rural mail service into office work at the post office, and so continued to his death. Whether or not this was such a change of occupation, or a mere change of service in the same character of occupation, and was made on account of his health, and was a matter material to the risk, were all questions which we think were proper for the jury's determination.

We interpret the opinion in Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 6 Cir., 72 F. 413, 38 L.R.A. 33, cited by defendant, as condemning the form of question propounded to the witness Yates. Perhaps our own cases would likewise be so interpreted. Reeder v. Huffman, 148 Ala. 472, 41 So. 177; Alabama Great So. R. Co. v. Flinn, 199 Ala. 177, 74 So. 246; Wear v. Wear, 200 Ala. 345, 76 So. 111; Southern Ry. Co. v. Haynes, 186 Ala. 60, 65 So. 339; Ferdon v. Dickens, 161 Ala. 181, 49 So. 888.

The form of question to witness Dr. Cloyd, defendant's medical director, appears to have been taken from the opinion in the Penn Mutual Life Insurance Co. Case, supra.

Under the circumstances of this case, however, we find no necessity to enter into a discussion of these assignments of error or any definite determination of the questions of evidence therein involved. This for the reason that no necessity existed in this case for the opinion of either of these witnesses on the matter of which inquiries were made. As said in 22 Corpus Juris 498: "The danger involved in receiving the opinion of a witness is that the jury may substitute such opinion for their own, and the courts will not require parties to encounter this danger unless some necessity therefor appears." The sole purpose of these questions was merely to show that the illness of insured in 1931 was of such a character as to increase the risk of loss. But this

was established by defendant's witnesses without dispute or qualification. The matter at issue in this regard was whether or not insured had recovered, and it was not denied by anyone that his illness in 1931 was serious, and of such character as to increase the risk of loss. The opinion of these witnesses, therefore, if allowed, would but be cumulative of an undisputed fact, and of consequence no necessity existed therefor. There was, therefore, no reversible error shown in this regard.

We think the case one for the jury's determination, and we are not persuaded the facts were such as to call for a disturbance of their verdict here in ruling on the assignment of error complaining of the action of the trial court denying a motion for a new trial, because the verdict was contrary to the great preponderance of the evidence.

We have considered the assignments of error argued in brief, and conclude that no error to reverse is made to appear.

The judgment is therefore due to be affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.