This is an appeal by Carnival Cruise Lines from a judgment in an action brought by Thomas H. Snoddy for injuries he sustained while a passenger aboard a cruise ship owned by Carnival Cruise Lines.
Snoddy, a high school mathematics teacher, was a chaperone for a group of high school students aboard the cruise ship TSSMardi Gras. Snoddy's injury was the result of an early morning fall on March 15, 1978, from the upper bunk in his cabin, apparently while he was still asleep. As a result of his fall, Snoddy suffered an open fracture of the left leg. He was treated aboard the ship and subsequently transported to a San Juan hospital and then to Birmingham for additional medical treatment. *Page 381 
Medical testimony at trial indicated that Snoddy suffered permanent physical impairment. Snoddy's physician prepared an impairment evaluation based upon the range of motion measurements of Snoddy's leg and testified that the range of motion limitations in the left knee and ankle, combined with the discrepancy in leg lengths due to the accident, resulted in a 33% impairment to Snoddy's lower extremity, or a 13-15% permanent impairment to his body as a whole. Snoddy continues to experience intermittent pain, and he limps when walking.
As a result of his hospitalization and rehabilitation, Snoddy missed eleven weeks of school at Berry High School and two terms of summer school at Jefferson State Junior College. He returned to his teaching duties on July 16, 1978, and was reinstated at his previous salary level. He has received an average annual raise of 7.2% since that time. Snoddy's duties as a mathematics teacher entail his standing on his feet and using the blackboard for much of his seven-hour work day. Since returning to work, Snoddy has not missed any work days due to his injuries.
The trial court instructed the jury as to various elements of tort liability and damages with respect to Snoddy's claims against Carnival Cruise, including "loss of earnings," but not including the element of "loss of future earning capacity." The jury returned a general verdict for Snoddy, awarding him damages of $35,000. Carnival Cruise's motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial were denied.
Appellant now claims error in the trial court's 1) admitting the testimony and exhibits of plaintiff's expert, and 2) denying appellant's post-trial motions.
 I. RULE OF EVIDENCE ISSUE
In a personal injury action, a plaintiff is entitled to recover both the value of the work time lost prior to trial ("lost earnings") and the value of the reduction in his ability to earn a living ("impairment of earning capacity"). D. Corley and C. Gamble, Alabama Law of Damages § 36-4 (1982); see, also, 22 Am.Jur.2d Damages § 90 (1965). In order, however, for a jury to make a determination as to the compensation due an injured plaintiff for a reduction in his ability to work, there must be evidence introduced at trial from which the jury may reasonably draw an inference as to the existence of an impaired capacity to earn, resulting from the injuries complained of. That is to say, there must be evidence from which the factfinder may reasonably translate the evidence of plaintiff's physical disability into a finding of plaintiff's inability to perform his work in the same manner as before sustaining his injuries.
On appeal, Carnival Cruise contends that the trial court erred in admitting, over objections, the testimony of Snoddy's economics expert, the overall purpose of which was to prove the present monetary value of plaintiff's projected loss of earning capacity. Snoddy did not offer, through this witness, an expert opinion as to any loss of earning capacity; rather, the 13% impairment estimate, testified to by Snoddy's doctor, wasfurnished, as one of the component elements of a hypothetical question from which the present value of such earnings could be calculated.
The continuing objections of counsel for Carnival Cruise to this proffered expert testimony led to an in camera discussion. We set out pertinent portions of that colloquy:
 "THE COURT: . . . Is it going to be your position that there is some demonstrated loss of earning capacity involved?
 "MR. YEAROUT [for the plaintiff]: . . . I'm going to ask her to measure what amount of dollars it would take to give him 13 percent of any future earnings that he might have lost as a result of this accident. . . .
 "MR. MANLEY [for the defendant]: Your Honor, we would object to that offer. . . . I don't think there is any testimony that would indicate that just because he has a 13 percent permanent *Page 382 
disability that that translates into a 13 percent loss of income.
". . . .
 "MR. YEAROUT: That's not what we are offering it for. He is 13 percent disabled.
". . . .
 "THE COURT: . . . [U]nless there is some testimony to show that he is not going to be able to continue his present employment. I don't know of any testimony along those lines.
 "MR. YEAROUT: But the testimony is that he is 13 percent disabled.
 "THE COURT: The testimony is not that he is not able to work. He has [an impairment] of 13 percent of the body as a whole. . . . But there is no testimony that he is not going to be able to continue his present employment. And, consequently, I think your damages . . . do not go to loss of earnings, insofar as his disability.
"MR. MANLEY: [H]e may not lose any earnings.
". . . .
 "THE COURT: That's right. . . . What concerns me is I don't think that saying that you have X percentage of disability to either a member of the body as a whole can be translated into saying that you have X percent loss of earning capacity.
". . . .
 "MR. MANLEY: We object to the offer on the grounds that there has been no testimony in this case that Mr. Snoddy's earning capacity has been affected by this accident at all. The only testimony is that he has a permanent impairment, and there is no testimony that connects the impairment to any decrease in his earning capacity."
In spite of his misgivings, the trial judge conditionally permitted plaintiff's expert to explain, by using a forecasting tool known as "trend analysis," that she had projected Snoddy's future earnings based upon an analysis of his earnings history, utilizing the 13% physiological impairment, as testified to by Snoddy's doctor.
In evaluating whether expert evidence is required for submission of the loss-of-earning-capacity issue to the jury, or whether the nature and extent of the injury, when considered along with the totality of the circumstances, furnish a reasonable inference of such a loss, we need to delineate between the two situations conceptually. The loss of a hand may have no effect on the capacity of a theoretical physicist to earn a living, while the same injury may have devastating economic consequences for a neurosurgeon, a concert pianist, or a construction worker. The degree of physical impairment is the same in each case, but the resulting impairment of earning capacity is quite different for each worker.
This is not to imply that compensation is precluded for the value of the hand per se; other categories of damages, such as pain and suffering and disfigurement, are compensable even if there is no diminished capacity to earn a living. Alabama GreatSouthern R. Co. v. Flinn, 199 Ala. 177, 74 So. 246 (1917). These damages will perhaps be theoretically similar for each worker, but the element of damages known as impairment of earning capacity is conceptually distinct and will vary with the circumstances and with the person. Hagler v. Gilliland,292 Ala. 262, 292 So.2d 647 (1974).
It is this element of individual variation that precludes the universal inference of diminished earning capacity merely from evidence of physical disability, and nothing more. A jury, left to flounder without some evidence of a causal connection between the physical impairment and the reduced earning capacity, and without an evidentiary predicate upon which to assess the actual degree of impairment in earning capacity, engages in pure speculation and conjecture. Unlike an assessment of damages for pain and suffering or mental anguish, the correlation of physical disability with impaired earning capacity cannot be said, in every case, to fall within the purview of the average person's common understanding and experience. Except in *Page 383 
extreme and obvious cases, some direct evidence of the existence and extent of impaired earning capacity is necessary as the foundation upon which the jury may make an informed assessment of damages. See Norwood Hospital v. Jones, 214 Ala. 314,107 So. 858 (1926); United States Cast Iron Pipe andFoundry Co. v. Eastham, 237 F. 185 (5th Cir. 1916) (applying Alabama law); Alabama Pattern Jury Instructions: Civil, Damages §§ 11.10, 11.11.
The line between those cases requiring expert testimony to correlate physical impairment with impaired capacity to earn and those falling within the common knowledge and experience of lay persons is a fine one, and must be drawn on a case-by-case basis. But we are not without precedential guidance in our application of the test.
Essentially, we are dealing here with a rule of evidence, a rule not materially different from the rule that obtains in other contexts involving expert evidence vis-a-vis lay testimony. Where the fact sought to be proved is fairly and reasonably inferable from competent evidence adduced at trial, and that inference lies within the common knowledge of the factfinder, then that evidence is admissible without the aid of expert testimony. For cases that demonstrate the application of this rule, see Southern Railway Co. v. Stallings, 268 Ala. 463,107 So.2d 873 (1958); Mackintosh Co. v. Wells, 218 Ala. 260,118 So. 276 (1928); Birmingham Electric Co. v. Cleveland,216 Ala. 455, 113 So. 403 (1927).
A rule that would permit the inference of diminished earning capacity from the fact of permanent injury alone is far too narrow, for surely "a person may suffer some permanent injury which would not permanently affect his earning capacity."Birmingham Electric Co. v. Cleveland, supra, 216 Ala. at 459,113 So. at 405. For a case not permitting the jury to consider loss of earning capacity as an element of damages, based merely on the nature and extent of the injury, see Norwood Hospital v.Jones, supra, 214 Ala. at 316, 107 So. at 860.
Whether the lay testimony in the instant case is sufficient to authorize submission to the jury of the lost-capacity-to-earn element of damages we need not decide. Arguably, the evidence meets the non-expert test; but, assuming, without deciding, that this issue would be resolved favorably to the injured party, his counsel's question to the economics expert invaded the fact-finding prerogative of the jury. In this posture, the jury was not permitted to find the loss of earning power from the lay evidence adduced, nor was it furnished the benefit of proper expert evidence of this issue.
In order to constitute reversible error, however, this illegal evidence must have been submitted to the jury as a component of the basis for its finding of damages. Our careful search of the record reveals that the trial judge, apparently finding that the condition upon which he admitted the evidence in the first instance had not been properly met, restricted the jury in its consideration of the elements of damages, as follows:
 "Now, as I told you, the burden is on the plaintiff to reasonably satisfy you from the evidence of the truthfulness of his claim. If you are reasonably satisfied [of] the truthfulness of that claim, then your verdict would be for the plaintiff. In that event, it is necessary to arrive at the amount to be awarded in the verdict form, which I am going to give to you a little later on. I am going to give you some rules of law to assist you in your deliberation in arriving at an amount, in the event that you find for the plaintiff. Now, the damages asked for by the plaintiff in this particular case are what we call compensatory damages. And the purpose of awarding compensatory damages is to fairly and reasonably compensate the injured party for the loss or injury sustained. Compensatory damages are intended as money compensation to the party wronged to compensate him for his injuries and other damages which have been inflicted upon him as a *Page 384 
proximate result of the wrong complained of.
 "The plaintiff claims these elements in connection with his damages. He claims medical expense; he claims loss of earnings; he claims physical pain and suffering and mental anguish; he claims that there has been permanent injury and disability.
 "Now, the law has no fixed monetary standard to compensate for physical pain and mental anguish. This element of damage is left to your good sound judgment and discretion as to what amount would reasonably and fairly compensate the plaintiff for such physical pain and mental anguish as you find from the evidence that the plaintiff did suffer.
 "If you are reasonably satisfied from the evidence that the plaintiff has undergone or will undergo pain and suffering or mental anguish as a proximate result of the injuries in question, you should award a sum which will reasonably and fairly compensate him for such pain, suffering or mental anguish that has already been suffered by him and for any pain, suffering or mental anguish which you are reasonably satisfied from the evidence he is reasonably certain to suffer in the future.
 "Now, it is for you to determine from the evidence the nature, extent and duration of the plaintiff's injuries. If you are reasonably satisfied from the evidence that the plaintiff has suffered permanent injuries and that such injuries proximately resulted from the wrongs complained of, then you should include in your verdict such sum as you determine to be reasonable compensation for such injuries.
 "In connection with medical expenses, the measure of damages for medical expenses is all reasonable expenses necessarily incurred for doctors and medical bills which the plaintiff has paid or becomes obligated to pay, and the amount of any reasonable expenses for medical care, treatment or services reasonably certain to be required in the future. The reasonableness of and the necessity of such expenses are matters for your determination from the evidence.
 "Now, in determining the amount of damages for loss of earnings, you should consider the evidence of — that has been introduced in connection with what the plaintiff ordinarily — what he missed in the way of lost wages and what he would have been entitled to during the period of time he was off.
 "Now, in awarding damages in any case, your verdict must not be based on mere speculation or conjecture, but must be based on the evidence and reasonable inferences shown therefrom." R 952-954.
The only mention of "earnings" as an element of damages, which is contained in the latter part of this above-quoted charge, related to "loss of earnings." This portion of the charge was appropriate, because it was not disputed that Snoddy had a period of lost earnings before returning to work following the accident.
Because the trial judge corrected the error, if any, with respect to the admission of the 13% disability as a component of the loss of earning capacity formula, we find no reversible error as to the adverse ruling complained of.
 II. DENIAL OF MOTIONS
Finally, appellant claims that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict.
The standard of review in analyzing this question is straightforward. As stated in Purcell Co. v. SpriggsEnterprises, Inc., 431 So.2d 515, 518 (Ala. 1983), "A trial court will not be reversed for refusing to direct a verdict in favor of a movant if a scintilla of evidence exists in favor of the party opposing the motion." In reviewing this case on appeal, we must examine the evidence in a light most favorable to the non-movant. Id. The question then becomes whether the evidence, viewed in its most favorable light, contains a scintilla of evidence that the defendant-appellant was negligent in failing to provide 1) an adequate leerail for Mr. Snoddy's bunk and 2) *Page 385 
sufficient medical equipment and supplies on board ship.
There was no dispute at trial that the fall from the bunk caused Mr. Snoddy's injury, although no one, including Mr. Snoddy, is quite sure how he fell. A marine safety expert testified that the leerail was not reasonable and adequate. The condition of the seas the morning of the fall is in dispute. There was no X-ray machine on board ship and the supply of an antibiotic used to cleanse wounds was exhausted during Mr. Snoddy's treatment. There was further testimony that, without an X-ray machine, it was impossible to tell whether the fracture was correctly set. This testimony, coupled with a review of the record as a whole, provides at least a scintilla of evidence that defendant-appellant breached its duty of care, proximately causing the injuries sustained. Consequently, the trial court did not err in denying the motions.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES and ADAMS, JJ., concur.
EMBRY and BEATTY, JJ., not sitting.